CHEMICAL BANK NEW YORK TRUST COMPANY, DOMMERICH DIVISION, Appellant, v HERBERT LIEBMAN et al., Respondents.

First Department, January 22, 1976

*Kurt J. Wolff* of counsel *(Daniel Wallen* and *Stuart M. Fischman* with him on the brief; *Otterbourg, Steindler, Houston & Rosen, P.C.,* attorneys), for appellant.

*Sidney Feldshuh* of counsel *(Richard M. Kraver* with him on the brief; *Feldshuh, Weinberger & Derfner,* attorneys), for respondents.

CAPOZZOLI, J. Plaintiff-appellant is a New York corporation. The defendants were either officers, directors or active in the management and operations of the business of three affiliated corporations.

On or about January 2, 1968 two of the corporations entered into factoring agreements with L. F. Dommerich & Co. Inc., the predecessor in interest to the plaintiff. The third corporation entered into a factoring agreement directly with the plaintiff on or about October 10, 1968.

When the factoring agreements were entered into, the defendants duly executed and delivered their respective joint and several guarantees of payment of the indebtedness of the three afore-mentioned corporations. These guarantees were given in order to induce Dommerich and the plaintiff to enter into the factoring agreements above mentioned.

Thereafter the three corporations encountered financial difficulties and failed to pay their indebtedness. The plaintiff

called upon the defendants to honor their guarantees, without success. This action was then brought by the plaintiff for the damages sustained.

Following the bringing of the action one of the corporations, Creations by Aria, Inc. (Aria), filed a petition under chapter 11 of the Bankruptcy Act, in the United States District Court for the Southern District of New York. When the bankruptcy proceeding was instituted Aria raised a question as to the proper amount due to the plaintiff. This was followed by negotiations which resulted in an agreement and understanding between the parties, whereby the total indebtedness to the plaintiff was fixed at $600,000. This was arrived at, by agreement, by the consolidation of the accounts of Aria and the other two corporations. The understanding was evidenced by means of a written stipulation of settlement, executed on December 24, 1969, signed by the defendant, Liebman, on behalf of the three affiliated corporations, and also the attorneys who represent the three defendants in this action. Amongst other things, it was "agreed that its [plaintiff's] claim shall be deemed in the amount of $600,000, to which the Debtor agrees". It further provided "4. The claim of the creditor [plaintiff] shall be deemed to be and fixed in the amount of $600,000".

Following the execution of the stipulation of settlement Aria, through its president, the defendant, Liebman, applied to the court for an order approving the stipulation of settlement in its entirety. The application resulted in an order, issued by Hon. Asa S. Herzog, Referee in Bankruptcy, approving the settlement and providing amongst other things, as follows: "ORDERED, that the claim of Chemical Bank — Dommerich Division, a creditor herein, be and it is hereby fixed in the amount of $600,000 for the purpose of said creditor filing its consent to the modified Plan of Arrangement herein and for disbursement and payment thereunder to said creditor".

Thereafter the plaintiff received dividends in the bankruptcy proceeding totaling $150,000, which was 25% of the $600,000 agreed upon as the fixed indebtedness. No further payment was received by the plaintiff and none will be made. The balance due to the plaintiff is $450,000 and plaintiff has demanded from the three defendants payment of this amount under their guarantees. The defendants have refused to pay and this action is therefore prosecuted.

The defendants argue that the receipt by the plaintiff of the 25% dividend in the bankruptcy proceeding was an accord and satisfaction of the entire debt due the plaintiff and also a discharge of the liability of the defendants under their guarantees. It is admitted that, other than the stipulation of settlement mentioned above, there is no other writing on which the contention of defendants can be based. They claim that there was an oral agreement with plaintiff which effected the discharge of the defendants' liability as guarantors.

In this connection it is important to note the following provision in the guarantees:

"Nothing shall discharge or satisfy the liability of the undersigned hereunder except the full performance and payment of the said obligation and indebtedness with interest."

"The undersigned further waive notice of and hereby consent to any agreement or arrangements whatever with the client or anyone else, including without limitation agreements and arrangements for payment, extension, subordination, composition, arrangement, discharge or release of the whole or any part of said obligations or of said indebtedness, contracts or agreements or other guarantors, or for the change or surrender of any or all security, or for compromise, whether by way of acceptance or part payment or of returns of merchandise *or of dividends* or in any other way whatsoever, *and the same shall in no way impair the undersigned's liability hereunder.*" (Emphasis added.)

The guarantees also contain the following language: "This instrument cannot be changed or terminated orally". Subdivision 1 of section 15-301 of the General Obligations Law states: "A written agreement or other written instrument which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought or by his agent." At this point it is helpful to note the provision found in the Bankruptcy Act (US Code, tit 11, § 34): "The liability of a person who is a co-debtor with, or guarantor or in any manner a surety for, a bankrupt shall not be altered by the discharge of such bankrupt."

The reliance of the defendants on an alleged oral agreement is misplaced because, under the circumstances of this case, an oral agreement could not operate to discharge the defendants from their responsibility to honor the obligations which they

assumed when they executed and delivered their guarantees. *(Chemical Bank v Wasserman,* 45 AD2d 703, affd 37 NY2d 249; *Manufacturers Hanover Trust Co. v Trans Nat. Communications,* 36 AD2d 709.)*

In the last-cited case this court said (p 710): "respondents may not avoid their obligation to plaintiff bank, evidenced by a written instrument, by claiming that there was an oral representation or promise on the part of the bank not to enforce the guarantee according to its terms. [Citing cases.]"

In *Chemical Bank v Wasserman (supra)* this court said that the "oral agreement, however, cannot operate to terminate [guarantor's] obligation and does not create a triable issue of fact. (General Obligations Law, § 15-301 * * *.)"

The contentions of the defendants defy reason. To argue that their concession of $600,000 being due from the corporations, which was made in the Bankruptcy Court, is to be limited strictly to the bankruptcy proceeding and in none other, is unbelievable. It is, in effect, to charge the Bankruptcy Court with permitting an excessive claim to be made by the plaintiff, to the prejudice of other creditors, simply to favor this plaintiff. It does not make sense.

The reliance of the dissent on the conclusory allegations contained in the affidavit of Liebman is entirely misplaced because there is not a single evidentiary fact set forth therein. It is replete with conclusions. As correctly stated in the affidavit of David Rubin, vice-president of plaintiff: "there is a failure to set forth the dates, the places or other details which might otherwise lend verisimilitude to this otherwise bald and unconvincing tale."

It is concluded that the order below, insofar as it denied motion of plaintiff for summary judgment, should be reversed on the law and summary judgment should be directed in favor of the plaintiff, with costs. Settle order on notice.

LUPIANO, J. (dissenting) In the fall of 1968, L.F. Dommerich, Inc., a commercial factor, financed certain business transactions for Creations by Aria, Inc., Creations by Alouette, Inc. and Aimant Fashions, Inc. Dommerich was acquired by Chemical Bank, and became its "Dommerich Division". Plaintiff Chemical Bank through this "Division", instituted the instant action on or about December 16, 1968, seeking to recover on written guarantees of payment of the indebtedness of the aforesaid corporations. The three defendants, the guar-

antors, were all either officers, directors or active in the management of the corporations and concede execution of the guarantees. Shortly after the institution of this action, Aria, Inc. filed a petition in bankruptcy pursuant to chapter 11 of the Federal Bankruptcy Act in the United States District Court for the Southern District of New York. In the course of the bankruptcy proceeding, plaintiff filed a proof of claim in which it asserted that Aria, Inc. was indebted to the Dommerich Division in the sum of $597,397.80. Apparently, plaintiff expressed an intention to amend this claim upwards to $992,965.30. Aria, Inc. disputed this claim and moved for an order to reduce or expunge same. The Referee ordered hearings to be held to determine the merits of the claim with a view toward resolution of Aria's motion. Defendants assert that plaintiff desired discontinuance of such motion because of irregularities in Dommerich's books and wanted to avoid an inspection and audit of these records. It is further averred that plaintiff induced Aria to discontinue its application by agreeing to accept $150,000 in full settlement of Dommerich's claims against all three corporations and that the claim was fixed in the sum of $600,000 in the bankruptcy proceeding in view of the plan of arrangement which provided for payment of 25% upon unsecured claims, as allowed. Herbert Liebman, a defendant guarantor and president of Aria, states with respect to the stipulation and order entered upon same in the bankruptcy proceeding, disposing of plaintiff's claim that: "[i]t was definitely agreed that the so-called personal guarantees would *not* be enforced but would be held solely to assure payment of the installments aggregating $150,000 under Aria's Plan of Arrangement. Pursuant to our agreement, plaintiff stopped further action of the purported claim that is now asserted against me and other individual defendants. This lawsuit, by this agreement and full understanding was rendered inactive except for the purpose set out above by the Stipulation of Settlement." It should be noted that plaintiff does not dispute that after the stipulation as enacted upon by the Referee in the form of an order dated January 23, 1970, it did nothing to vindicate its rights in the present action against the guarantors until after it received payment of the entire $150,000 from Aria.

Pursuant to the stipulation between Aria, the debtor in possession, and plaintiff in the bankruptcy proceeding, to which Creations by Alouette, Inc. and Aimant Fashions, Inc.

were also parties, the debtor (Aria) agreed to an amended plan of arrangement providing for payment upon unsecured claims, as allowed (on a stepped-up basis) of 25%. It was further agreed that the plaintiff's claim "shall be deemed to be and fixed in the amount of $600,000 which is arrived at by consolidation of the accounts of Creations by Aria, Inc., Aimant Fashions and Creations by Alouette Inc." and that if an order of confirmation of the amended plan of arrangement is not entered, plaintiff was not bound to the said $600,000. The stipulation was expressly made "subject to the approval of the Court". This approval was embodied in an order dated January 23, 1970 as aforesaid which in pertinent part declares that the stipulation in substance provides for: "2. the claim of [plaintiff] for the purposes of consent to and acceptance of the modified Plan of Arrangement and disbursement and payment thereunder, is deemed to be in the amount of $600,000" and directs "that the claim of [plaintiff], a creditor herein, be and it is hereby fixed in the amount of $600,000 *for the purpose of said creditor filing its consent to the modified Plan of Arrangement herein and for disbursement and payment thereunder to said creditor"* (emphasis supplied).

The guarantees sued upon herein provide that they "cannot be changed or terminated orally". Plaintiff in reliance on this and the stipulation entered into in the bankruptcy proceeding moved in this action to amend its complaint to reduce the amount sought to $450,000 ($600,000 less $150,000 received) and for summary judgment. Special Term granted the amendment, but denied summary judgment. Plaintiff appeals only from the denial of summary judgment. Affirmance is warranted. "To grant summary judgment it must clearly appear that no material and triable issue of fact is presented *(DiMenna & Sons v. City of New York,* 301 N.Y. 118). This drastic remedy should not be granted where there is any doubt as to the existence of such issues *(Braun v. Carey,* 280 App. Div. 1019), or where the issue is 'arguable' *(Barrett v. Jacobs,* 255 N.Y. 520, 522; 'issue-finding, rather than issue-determination, is the key to the procedure' *(Esteve v. Avad,* 271 App. Div. 725, 727 [1st Dept., 1947])". *(Sillman v Twentieth Century-Fox,* 3 NY2d 395, 404 [1957].)

It must again be pointed out that no dispute is raised with respect to the individual guarantees upon which plaintiff is suing. However, if plaintiff entered into an agreement with the corporate debtors to liquidate its claim in full settlement

thereof, there would be no basis upon which plaintiff could thereafter recover additional moneys from the individual guarantors under the guarantees. Acceptance of plaintiff's contention that it is entitled to summary judgment on the instant record has as a necessary corollary the admission by the defendants to individual liability of $450,000 under their guarantees by the execution of the three corporate debtors, which said individuals apparently control, of the stipulation. In the bankruptcy proceeding it is clear that a dispute existed as to the proper amounts of moneys due plaintiff. The record contains averments by defendants that the financial papers and records of the parties were in such a disorganized state as to make resolution of the amount actually due plaintiff problematical. The stipulation was drafted against this background and with the knowledge that the proposed amended plan of arrangement provided for the creditors receiving 25 cents on the dollar. Further, the stipulation was drafted for an ostensible purpose which was embodied in the order delineated above, i.e., to obtain plaintiff's consent to the plan of arrangement and to insure payment thereunder of the $150,000 to plaintiff.

What is critical, therefore, are the circumstances surrounding the stipulation entered into by the parties in the bankruptcy proceeding. It is well to keep in mind that "the writing in a written contract is not the contract; it is only evidence of the contract. Evidence extrinsic to the writing is received where doubt arises upon the face of the instrument as to its meaning, not to enable the court to hear what the parties said, but to enable it to understand what they wrote as they understood it at the time; such evidence is explanatory and admissible only as consistent with the terms of the contract" (22 NY Jur, Evidence, § 615). Thus posed, is the stipulation susceptible of only plaintiff's interpretation, that is, that it constitutes an admission by the corporate debtors of liability to plaintiff in the amount of $600,000 with payment to be made thereunder of *only* $150,000, with the consequent balance to be paid by resort to the defendants on their guarantees or is the stipulation susceptible of another interpretation, that is, recognition that its purpose is to obtain approval of the plan of arrangement and to secure payment thereunder of a specific, agreed upon amount with consequences that any sums due over such specified payment must be proved in the action on the guarantees or, alternatively, that such payment

would constitute a complete settlement of plaintiff's claim. Pragmatic recognition of the relationship of the defendants to the corporate signatories, the financial status of Aria and the averred inadequacy of the financial records and books of Dommerich which, on this record, is not disputed by plaintiff, and the inaction of the plaintiff in the pending action against the guarantors subsequent to the order approving the stipulation, warrants the conclusion that parol evidence with respect to what was in the minds of the parties at the time of making the stipulation is required. The assertion by defendant Herbert Liebman that "the records formerly maintained by Dommerich were in such a state of confusion that the parties could not ascertain the true amount owing by one to the other" is supported by documentary evidence in the form of letters of plaintiff dated October 31, 1970 relating to an audit of its accounts conducted by S.D. Leidesdorf & Co. These letters purport to show a balance due to plaintiff from Creations by Aria, Inc. of $374,385.03 and a balance due from plaintiff to Creations by Alouette, Inc. of $401,896.68. Although the aforesaid letters were sent by plaintiff some months after the order approving the stipulation of settlement in the bankruptcy proceeding, they are presumptively supportive of the defendants' contentions. Further, in response to defendant Liebman's assertion, plaintiff simply admits that "[t]here is no doubt that there was a sharp dispute in the Bankruptcy Proceedings as to the amounts of defendants' indebtedness." While silent as to its inactivity in the pending action against the guarantors subsequent to the order approving the stipulation, plaintiff self-righteously casts the aura of evasiveness upon defendants, declaring that "[a]ll there is, is the typical claim by a guarantor that there was some nebulous and ill-defined oral agreement and even as to that oral agreement * * * there is a failure to set forth the dates, the places or other details which might otherwise lend verisimilitude to this otherwise bald and unconvincing tale". Thus we are urged by plaintiff to adopt its interpretation of the stipulation and the order approving same, but without convincing explanation for the ambiguity presented by the surrounding circumstances as gleaned from the record. As a salutary guideline on motions for summary judgment, we are required to accept as true the opposing party's evidence and any evidence of the movant which favors the opposing party (see *Weiss v Garfield,* 21 AD2d 156 [3d Dept., 1964]). After all, the granting of a motion for summary judgment is the procedural equivalent of a trial.

Patently the language of the stipulation, viewed in the context of the order approving the stipulation, lends inferential support to the defendants' assertion that "[s]ince Aria's Plan of Arrangement required payments to creditors of sums equaling twenty-five (25) percent of their claims, the claim filed by Dommerich against Aria was *arbitrarily* fixed at four times the amount negotiated for purposes of settlement". Apropos of this, is the following observation: "A latent ambiguity which may be explained by parol evidence occurs where the language employed is clear and intelligible and suggests but a single meaning, but some extrinsic fact or evidence aliunde creates a necessity for interpretation or a choice among two or more possible meanings. More elaborately stated, an ambiguity is properly latent, in the sense of the law, when the equivocality of expression or obscurity of intention does not arise from the words themselves, but from the ambiguous or obscure state of extrinsic circumstances to which the words of the instrument refer, and which is susceptible of explanation by a mere development of extraneous facts without altering or adding to the written language or requiring more to be understood thereby than will fairly comport with the ordinary or legal sense of the words made use of" (22 NY Jur, Evidence, § 617). It is beyond peradventure that the fundamental rule for the construction of an agreement is that it must be interpreted *in accordance with the intention of the parties thereto.* Not only the agreement itself, but also its purpose, the subject matter with which it deals and the circumstances under which it was made are relevant considerations in determining such intent. The subsequent acts of the parties under the agreement are similarly relevant. In other words, the spirit and purpose of the agreement as well as its letter must be considered in the interpretation and application thereof.

The circumstances and the legal principles delineated above are such as to raise an issue as to whether the stipulation expresses the entire agreement of the parties. Defendants assert that it was agreed (orally) that their personal guarantees would not be acted upon by plaintiff, but would be held solely to assure payment of the installments aggregating $150,000 under Aria's plan of arrangement and that pursuant to this agreement, plaintiff desisted from further proceeding in the instant action. To reiterate, the stipulation dated December 24, 1969, entered into subsequent to the commence-

ment of this action, was approved by order of the Referee in Bankruptcy dated January 23, 1970 and plaintiff acknowledged receipt of the $150,000 paid pursuant thereto by affidavit herein dated May 15, 1975. Study of the record discloses that during the interval from January 23, 1970 to May 15, 1975, apart from a notice to take defendants' deposition, plaintiff did not seek partial summary judgment of $450,000 based upon the stipulation and the guarantees.

Under the doctrine of collateral contract, "a collateral parol agreement, being a separate, independent contract, although relating to the same subject matter as that of the contract in writing, is provable by parol evidence. * * * Oral collateral agreements are allowed to be proved because they are not a part of the written one. * * * To permit an oral agreement to vary a written contract pursuant to the doctrine, the oral agreement must be collateral, must not contradict express or implied conditions of the written one, and must be one which the parties could not reasonably be expected to embody in the writing" (22 NY Jur, Evidence, § 629). In connection with the possible relevance of this doctrine, the relationship of the defendants to the corporate debtors, particularly to the bankrupt debtor in possession (Aria) could well militate against making an understanding as to release of defendants on their guarantees a part of the written stipulation. Such understanding, disclosed, might well tend to cast a cloud over the status of plaintiff's position as a creditor in terms of the amount plaintiff was to *actually* receive vis-a-vis the other creditors.

Accordingly, it is concluded that on this record, Special Term properly denied summary judgment, observing that an issue is raised "of what the intent of the parties was when they entered into [the] stipulation of settlement in [the] federal bankruptcy proceeding". Parenthetically, it is also noted that the issues of liability and damages are so inextricably intertwined that no purpose would be served by the granting of summary judgment *(Harold Ohringer, Inc. v Kass,* 28 AD2d 1117 [1st Dept, 1967]). The order of the Supreme Court, New York County (H. SCHWARTZ, J.), entered August 6, 1975, insofar as appealed from, should be affirmed with costs and disbursements.

STEVENS, P. J., KUPFERMAN and MURPHY, JJ., concur with CAPOZZOLI, J.; LUPIANO, J., dissents in an opinion.

Order, Supreme Court, New York County, entered August 6,

1975, insofar as appealed from, reversed, on the law, and plaintiff's motion for summary judgment granted. Appellant shall recover of respondents $60 costs and disbursements of this appeal.

Settle order on notice.