Fboessel, J.
Defendant Berman Swarttz Productions, Inc., (hereinafter called Swarttz) entered into separate contracts, under date of June 30, 1953, with plaintiffs and various other persons interested in the Broadway musical revue “ New Faces of 1952 ”, in order to produce a motion picture version of the stage production. Plaintiffs’ contracts may be summarized as follows:
Swarttz agreed to pay each plaintiff a certain percentage of the net profits of the picture. In exchange, The Intimate Revue Company (hereinafter called Revue), in the basic agreement, granted Swarttz the exclusive right to use the physical properties of the show; New Faces, Inc., (hereinafter called New Faces) granted Swarttz the exclusive right to use its trade names; Julian K. Sprague (and others) invested moneys in the picture by way of interest-bearing loans; and Leonard Sillman agreed to act as the associate producer.
In addition, in the Revue and Sprague contracts, Swarttz agreed to give the distributor of the picture a “ Notice of Irrevocable Authority ” directing it to pay directly to Revue and Sprague their share of the profits. Similarly, in the New Faces and Sillman contracts, Swarttz agreed to deliver a “ Notice of Irrevocable Assignment and Authority ” directing the distributor to pay directly to New Faces and Sillman their share of the profits and also agreed that their share would be so paid. All of the contracts permitted assignment.
It was originally contemplated that the picture was to be distributed by the United Artists Corporation in third dimension and color. Shortly thereafter, however, so as to obtain the *399 benefits of the CinemaScope process, it was decided to distribute the picture through defendant Twentieth Century-Fox Film Corporation (hereinafter called Twentieth Century).
In order to effect these new arrangements, Swarttz, on September 8, 1953, entered into a contract with defendant National Pictures Corporation (hereinafter called National), which had a CinemaScope license and a distribution agreement with Twentieth Century. Under this contract, Swarttz assigned to National all of Swarttz’s rights under the various agreements with persons, including plaintiffs, having an interest in the production. In consideration, National agreed to pay Swarttz a certain percentage of the net profits of the picture less the percentages to be paid to the persons, firms and corporations, including plaintiffs, entitled thereto. National accepted such assignments and expressly assumed all of Swarttz’s obligations thereunder. National also agreed to give Twentieth Century a “Notice of Irrevocable Authority” directing the latter to pay to Chemical Bank and Trust Company for the accounts of Swarttz and of plaintiffs their percentages of the profits and that the bank was to pay these sums directly to Swarttz and plaintiffs.
National’s distribution agreement with Twentieth Century had been entered into on April 16, 1951, or more than two years prior to the making of any of the aforesaid agreements. Twentieth Century alleges that plaintiffs knew of this contract before Swarttz’s contract with National, but plaintiffs deny that they had any knowledge of the contract until November, 1953. Under its terms, National is to furnish Twentieth Century with 7 to 10 pictures during the ensuing 7 years, each picture to cost a minimum of $400,000 and to be free from all incumbrances and from the claims of owners of any material used in the pictures.
At least 10 days prior to the delivery of each picture, National is to deliver to Twentieth Century: “ Photostat copies of all contracts for the acquisition of literary or other material used in the Picture and with producers, directors, musicians, actors, actresses and any other persons who render services for or in connection with the production of the Picture.” Twentieth Century is given the right (but not the obligation) to examine such contracts and if, in the opinion of Twentieth Century’s attorneys, they are not sufficient to permit full exercise of Twentieth Century’s rights or the picture fails to conform to *400 the agreement, National shall, upon written notice within 60 days of receipt of the contracts, be deemed in default. Twentieth Century may terminate the contract upon any default of National. Acceptance of the picture by Twentieth Century shall not be construed to release or relieve National of any of its representations, warranties, indemnities or covenants in the agreement, one of which was to “ discharge (1) all claims ”.
After deduction of a distribution fee and expenses, the receipts of the picture are “payable to or for the account of ” National (emphasis supplied). Except for assignments by National to two named corporations, or for the the purpose of securing loans by a prescribed procedure, article Twbxtt-Foubth of the agreement provides, among other things: “ (a) * * * neither party hereto shall assign this agreement, in whole or in part, or any rights or monies payable hereunder, without the prior written consent of the other party, nor shall any right hereunder or any property or contract covered hereby devolve by operation of law or otherwise upon any receiver, trustee, liquidator, successor or other person through or as representative of either party.” It was further provided that Twentieth Century shall not be required to pay any sum payable to National to anyone except National or one designee only; that Twentieth Century shall not be required to recognize any assignments; and that if Twentieth Century shall receive notice of the existence of any assignment, it shall have the right to withhold payments until the assignment is cancelled or withdrawn.
Under the provisions of this agreement, plaintiffs’ contracts with Swarttz and Swarttz’s contract with National were submitted for inspection to Twentieth Century, which evinced no objection to any part of these contracts. The picture, although costing only $220,000 instead of the required $400,000, was delivered to and accepted and distributed by Twentieth Century under this agreement. Shortly after the first release of the picture, plaintiffs’ attorney gave notice to Twentieth Century’s attorney of the direct payment provisions in plaintiffs’ contracts and was assured by him that Twentieth Century could and would “hold up distribution of moneys to National” under its contract.
Chemical Bank and Trust Company has refused to accept such funds as a distribution agent, and this contributed to the present *401 controversy. Twentieth Century now holds a portion of the receipts deposited with defendant “ Chase National Bank ” and threatens to distribute such receipts in disregard of plaintiffs’ claims. Both National and Swarttz have refused to execute notices of irrevocable authority as required by their contracts.
In this action, plaintiffs seek a declaration of their rights, the impression of a lien upon the receipts of the picture, a direction to pay to each of them a stated percentage of such receipts, an injunction prohibiting Twentieth Century from otherwise distributing them, an accounting and a money judgment for such sums as they claim are now due them. In addition, specific performance is sought of the agreements of National and Swarttz to execute and deliver the irrevocable notices. At Special Term, Twentieth Century’s motion for summary judgment, or, in the alternative, for joinder of indispensable parties, was denied. The Appellate Division reversed on the law, and granted summary judgment without passing on the motion for joinder.
Both National and Swarttz are California corporations doing no business and having no assets in New York. They were served only in California and neither has appeared in this action, although the corporate defendant Swarttz has executed stipulations by Swarttz as president for extensions of time to answer. Other persons, whose contracts with Swarttz in regard to this picture entitle them to similar percentage payments as plaintiffs, have brought suit in California where their claims in some respects are said to conflict with those of plaintiffs.
In our opinion, Special Term was correct in denying defendants’ alternative prayer for relief, viz., that assignees other than plaintiffs be brought into this action as indispensable parties. They are not such parties. Each of the plaintiffs in the case relies on a separate and distinct agreement. Even if we deemed them and other assignees as united in interest and conditionally necessary parties, they are all without the jurisdiction of this State, and therefore are not required to be brought into this action, for it can effectively be disposed of without them (Civ. Prac. Act, § 194; Keene v. Chambers, 271 N. Y. 326; Howard v. Arthur Murray, Inc., 281 App. Div. 806; Silberfeld v. Swiss Bank Corp., 266 App. Div. 756; see China Sugar Refining Co. v. Anderson, Meyer & Co., 6 Misc 2d 184). And so with the defendants, National and Swarttz, plaintiffs’ ” *402 assignors (Bergman v. Liverpool & London & Globe Ins. Co., 269 App. Div. 103). Though also outside the jurisdiction of this State, they have nevertheless been named as parties defendant in this action, have been served outside the State under the provisions of sections 232-235 of the Civil Practice Act, and are subject to an in rem judgment.
Since plaintiffs have no direct contractual relationship with Twentieth Century, they can prevail in their claim for direct payments only on the theory of an assumption of such an obligation by Twentieth Century or on the theory of an assignment from Swarttz and National. We see no merit whatever as to the first theory, for, whatever the law may be elsewhere (see Restatement, Contracts, § 164), it is well settled in this State that the assignee of rights under a bilateral contract does not become bound to perform the duties under that contract unless he expressly assumes to do so (Langel v. Bets, 250 N. Y. 159, 164; Matter of Kaufman [Iselin & Co.], 272 App. Div. 578, 581; Smith v. Morin Bros., 233 App. Div. 562, 564; Anderson v. New York & H. R. R. Co., 132 App. Div. 183, 187, 188; New York Phonograph Co. v. Davega, 127 App. Div. 222, 234; 2 Williston on Contracts, § 418A), which is not this case.
As to the second ground pressed on us by plaintiffs, we conclude that Swarttz and National intended a present assignment to plaintiffs of a portion of the funds to become due to the former from Twentieth Century, and that such funds would ordinarily be assignable. (Matter of Gruner, 295 N. Y. 510, 517, 518.) All that was left for the future was the formality of a “Notice” to Twentieth Century of the assignment. Such notice to the obligor is not required for an effective assignment,except to defeat a subsequent bona fide payment by the obligor (Williams v. Ingersoll, 89 N. Y. 508, 522; State Factors Corp. v. Sales Factors Corp., 257 App. Div. 101, 103).
The funds accruing to National under its contract with Twentieth Century, however, may be made nonassignable if that agreement in appropriate language so provides. We all agree with the Appellate Division that said contract does so provide and that Allhusen v. Caristo Constr. Corp. (303 N. Y. 446) is controlling here.
A prohibition against assignment, however, may be waived (Devlin v. Mayor of City of N. Y., 63 N. Y. 8, 14; Brewster v. City of Hornellsville, 35 App. Div. 161, 166; Hackett v. *403 Campbell, 10 App. Div. 523, 526, affd. 159 N. Y. 537; see, also, Woollard v. Schaffer Stores Co., 272 N. Y. 304; Gillette Bros. v. Aristocrat Restaurant, 239 N. Y. 87, 89, 90; Murray v. Harway, 56 N. Y. 337, 342, 343; Ireland v. Nichols, 46 N. Y. 413, 416). The very wording of the clause that Twentieth Century “ shall not be required to ” recognize assignments made without consent and 11 shall have the right to withhold ’ ’ payments indicates that the parties contemplated that Twentieth Century might recognize such assignments and thereby waive the anti-assignment clause. Waiver is “ the intentional relinquishment of a known right ” (Werking v. Amity Estates, 2 N Y 2d 43, 52). As we stated in Alsens Amer. Portland Cement Works v. Deg-non Contr. Co. (222 N. Y. 34, 37): “ It is essentially a matter of intention. * * * Commonly, it is sought to be proved by various species of proofs and evidence, by declarations, by acts and by non-feasance, permitting differing inferences and which do not directly, unmistakably or unequivocally establish it. Then it is for the jury to determine from the facts as proved or found by them whether or not the intention existed.” (See Devlin v. Mayor of City of N. Y., supra; Brewster v. City of Hornellsville, supra.)
As to this issue of waiver, it appears from the papers that National’s contract with Twentieth Century forbidding assignments was made in 1951, more than two years prior to the assignments in question; that Twentieth Century examined all the contracts here involved prior to accepting the picture from National in 1953, and consequently knew of the assignments to plaintiffs which it now alleges are a breach of its agreement with National; that, having examined these contracts, Twentieth Century was required by its agreement with National to notify National within 60 days if they were to be treated as a breach of the agreement; that Twentieth Century failed to so notify National; that Twentieth Century accepted the picture and exercised the rights created by the very contract which made the assignments to plaintiffs without notifying either plaintiffs or National of any intention to consider them void; that shortly after the picture was released, and after Chemical Bank refused to act as distributing agent, plaintiffs’ attorney spoke about the assignments to Twentieth Century’s attorney, who not only evinced no objection at the time, but stated that Twentieth Century would withhold distribution of moneys to National. *404 While of course not decisive, these facts have an important bearing on the issue of waiver.
Buie 113 of the Buies of Civil Practice provides that when an answer is served with a defense, sufficient as a matter of law, founded upon facts established prima facie by documentary evidence, ‘1 the complaint may be dismissed on motion unless the plaintiff * * * shall show such facts as may be deemed by the judge hearing the motion, sufficient to raise an issue with respect to the verity and conclusiveness of such documentary evidence ”. The Judge who heard this motion at Special Term concluded that the question of waiver raised a triable issue; so did two Justices of the Appellate Division; and so do we. To hold that there is a triable issue as to waiver does not, as our dissenting brethren claim, frustrate the plain purpose of the anti-assignment clause, except as the waiver of any contractual provision, clearly recognized by law, frustrates such provision; indeed, to hold as a matter of law that there was no waiver here would sharply depart from our established summary judgment procedure.
To grant summary judgment it must clearly appear that no material and triable issue of fact is presented (Di Menna & Sons v. City of New York, 301 N. Y. 118). This drastic remedy should not be granted where there is any doubt as to the existence of such issues (Braun v. Carey, 280 App. Div. 1019), or where the issue is “ arguable ” (Barrett v. Jacobs, 255 N. Y. 520, 522); “ issue-finding, rather than issue-determination, is the key to the procedure ” (Esteve v. Avad, 271 App. Div. 725, 727). In Gravenhorst v. Zimmerman (236 N. Y. 22, 38-39) Chief Judge Hiscock, writing for this court, observed that one person may argue that as matter of law the assignor abandoned and lost the benefit of his rescission, whereas another might think that was a question of fact, and concluded: “ It never could have been, or in justice ought to have been, the intention of those who framed our Practice Act and rules thereunder that the decision of such a serious question as this should he flung off on a motion for summary judgment. Whatever the final judgment may he the defendants were entitled to have the issue deliberately tried and their right to be heard in the usual manner of a trial protected.”
Inasmuch as it is our opinion, upon this record, that a triable issue is presented as to the alleged waiver of the anti-assign *405 ment clause, the judgment appealed from should be reversed and the order of Special Term reinstated, with costs.