■ GRAPHIC SCANNING CORP. et al., Appellants, v PEOPLE PAGER, INC., et al., Respondents.—Order and judgment (one paper), Supreme Court, New York County, entered on March 7, 1980, granting defendant Zuckerman's motion for partial summary judgment on a fourth counterclaim in his amended answer, unanimously reversed, on the law, with costs and disbursements, and the motion denied. Plaintiff-appellant Graphic Scanning

Corporation, (Graphic) is an out-of-State corporation engaged, through its subsidiaries, in providing radio paging services in various areas of the country. Defendant People Pager, Inc., is a New York corporation organized in January, 1979, by defendants Zuckerman and Barnes and is also engaged in the business of providing radio paging services. The radio paging business consists of establishing radio common carrier stations in the areas to be served and, transmitting on assigned frequencies, radio paging signals to subscribers, who have in their possession small receivers capable of receiving these signals. The subscribers are thus alerted that contact with them by others is desired. In some instances a radio paging business is an adjunct to a telephone answering services business. When a telephone answering service receives a call intended for one of its customers, if a paging service is connected therewith, the answering service may alert the customer to the call immediately. However, where no such association exists an answering service must then inform a paging service of the incoming call. If this link is made through a telephone call, the cost is borne by the answering service and, in some cases, is passed on to the subscriber. Obviously, it would be advantageous for a person to subscribe to a service where the cost of the linking call is borne by the answering service and not passed along. Prior to June 30, 1978, defendant Zuckerman was a major stockholder, director and treasurer of the corporate plaintiff, Radio Relay Corporation-Delaware (Radio Relay). On this date, Graphic entered into a stock purchase agreement with Zuckerman and others to purchase for a sum in excess of six million dollars all the outstanding shares of Radio Relay. Closing under this agreement and transfer of ownership of Radio Relay to Graphic took place on December 21, 1978. In order to protect its investment Graphic bargained for and obtained a five-year restrictive covenant which provided that: "For a period of five years following the Closing Date none of the Sellers * * * shall, directly or indirectly, as officer, director, stockholder, partner, associate, employee, agent, salesman, consultant, co-venturer, creditor, owner or representative, take any action in or participate with or become interested in or associated with any person, firm, partnership, corporation or other entity whatsoever engaged in the radio communications common carrier business or any other business which provides, directly or indirectly, radio transmission services or facilities to any person or group of persons within any area set forth in the contour maps on file with the FCC on the Closing Date, or any area as to which the Company has applied for the right to establish a facility on the Closing Date, or any other area to or within which, wherever located, the Company has the authority to transmit signals on the Closing Date". During negotiation of this covenant, Zuckerman concededly owned, and still owns, an interest in two telephone answering services. Defendant Zuckerman is the sole stockholder in Cliffcorn Answering Service, Inc. (Cliffcorn), which broadcasts in certain parts of Brooklyn, and Telephone Secretarial Service (TSS), which operates in a designated section of Nassau County. At the time when Zuckerman was a major stockholder of Radio Relay, the costs of a linking call from Cliffcorn and TSS to Radio Relay were not passed along to the customers of the telephone answering services. However, when ownership of Radio Relay passed to Graphic, the costs of this linking call were borne by the subscribers. Thereafter, Zuckerman sought to continue the prior beneficial arrangement. Graphic did agree to provide a free linking call to those customers served by Cliffcorn but would not extend this same privilege to those served by TSS. Apparently, one of Graphic's subsidiaries, Port Telephone Answering Service (Port), is in direct competition with TSS. In April, 1979, Zuckerman

proposed to enter into a contract with Lin Communications (Lin), who is not a party to this action nor a party to the restrictive covenant. Pursuant to this agreement customers of TSS would receive access to the paging services of Lin without charge for the linking telephone call. Plaintiff then instituted the present action seeking, *inter alia,* damages and injunctive relief for defendants' acts of diversion of corporate opportunity, breach of stock purchase agreement and unfair competition. Defendant answered generally denying all allegations. Thereafter, defendant moved for partial summary judgment on the fourth counterclaim pleaded in the amended answer and declaring that the proposed contract between TSS and Lin does not breach the restrictive covenant in the stock purchase agreement. Special Term granted this motion and found that the intention of the parties was not explicitly set forth in their agreements so as to bar Zuckerman from entering into the contract with Lin. We reverse. There are substantial and material questions of fact pervading this entire arrangement so as to preclude the granting of partial summary judgment on this counterclaim. Special Term decided this motion on the submitted papers without having the benefit of the proposed contract between TSS and Lin before it. This agreement would either substantiate or controvert defendants' claim that TSS would have no interest whatsoever in the radio paging business of Lin. This agreement would also disclose the relationship, if any, between these parties and aid in determining whether defendant Zuckerman has become directly or indirectly associated with Lin in violation of the restrictive covenant. Moreover, the restrictive covenant if enforced to the extent requested by Graphic could effectively force TSS out of this specific market place thus unreasonably enlarging the scope of the restrictive covenant beyond its terms. Nor have sufficient facts been presented to ascertain whether this agreement between TSS and Lin is merely a substitute for a carefully orchestrated plan to divert customers away from Radio Relay to the latter's economic detriment. Clearly, this entire arrangement has raised substantial and material questions of fact as to whether the proposed contract between TSS and Lin violates the stock purchase agreement of June 30, 1978. A determination of these issues cannot be resolved in advance of trial *(Sillman v Twentieth Century-Fox Film Corp.,* 3 NY2d 395). We also note that there could conceivably be other issues in this action not considered by Special Term so as to also bar the granting of this motion. Concur—Fein, J. P., Sandler, Ross, Yesawich and Carro, JJ.