■ MARIA ALVAREZ, Respondent, v PROSPECT HOSPITAL et al., Defendants, and JESSE D. STARK, Appellant. PROSPECT HOSPITAL, Third-Party Plaintiff, v PATRICK WALSH, Third-Party Defendant.—Order, Supreme Court, Bronx County (Anthony Mercorella, J.), entered on or about November 4, 1983, affirmed, without costs and without disbursements. Concur—Sandler, Ross and Milonas, JJ.; Ross and Milonas, JJ., concur in a memorandum by Ross, J.; Kupferman, J. P., and Asch, J., dissent in a memorandum by Asch, J.; and Sandler, J., concurs in the result reached on the basis of *Winegrad v New York Univ. Med. Center* (64 NY2d 851, 853), all as follows:

Ross, J. (concurring): In late 1978, as a result of the then 32-year-old plaintiff's complaint of abdominal pain, she was admitted as a patient to Prospect Hospital (Hospital), which was located in The Bronx. Thereafter, in December 1978, while plaintiff was in that Hospital, her attending physician, Dr. J. Neill (Dr. Neill), ordered certain X rays, including a chest X ray, an intravenous pyelogram and a barium enema. After these X rays were taken, Dr. Jesse D. Stark (Stark), who was a board certified radiologist and Chief of Radiology at the Hospital, interpreted the results. In pertinent part, Dr. Stark wrote in his report, dated December 7, 1978, to Dr. Neill, that the barium enema indicated cecal neoplasm of the cecum of the colon, which, in substance, is a cancerous growth in the intestinal area. Our review of the record reveals that Dr. Stark, besides submitting this report, did not discuss either the seriousness of this finding or anything else about this patient with Dr. Neill. Subsequently, on December 16, 1978, plaintiff was discharged from the Hospital with a diagnosis of acute gastroenteritis.

Approximately a year later, on December 4, 1979, plaintiff was again a patient in this Hospital, since her abdominal pain had continued. This time the plaintiff's attending physician was Dr. P. Gubitose (Dr. Gubitose), and he, *inter alia,* requested that Dr. Stark perform another barium enema on the plaintiff. In pertinent part, in his written report, dated December 6, 1979, to Dr. Gubitose, Dr. Stark again made a finding of "cecal neoplasm". Later, in December 1979, the plaintiff un-

derwent a bowel resection to endeavor to remove the malignancy.

Subsequent to her surgery, in March 1981, plaintiff commenced this instant medical malpractice action against the hospital and nine physicians, including Dr. Stark, Dr. Neill and Dr. Gubitose, for failure to make a proper and timely diagnosis of carcinoma of plaintiff's cecum, which is the first segment of her large intestine, and failure to render proper aftercare. Following service of his answer, the furnishing of a bill of particulars to him by plaintiff, and defendant Dr. Stark's own examination before trial, Dr. Stark moved for summary judgment. His motion, in substance, is based upon the ground that his only responsibility to the plaintiff was to interpret the X rays correctly, which he did since the plaintiff admits that fact. Special Term denied the motion.

We agree.

Based upon our examination of the record, we find that defendant has failed to make a prima facie showing that entitles him to judgment as a matter of law. "[T]he bare conclusory assertions * * * that [defendant Dr. Stark] did not deviate from good and accepted medical practices, with no factual relationship to the alleged injury [does] not establish that the cause of action has no merit so as to entitle [defendant] to summary judgment [citations omitted]". (Winegrad v New York Univ. Med. Center, 64 NY2d 851, 853 [material in brackets added].) Summary judgment is issue finding rather than issue determination (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395).

The Court of Appeals has held in Toth v Community Hosp. (22 NY2d 255, 263), that: "If a physician fails to employ his expertise or best judgment, and that omission causes injury, he should not automatically be freed from liability because in fact he adhered to acceptable practice." Applying the Toth holding to the instant case, we find that Dr. Stark was more than simply an X-ray technician, and as a consequence of that fact, we conclude that there is an issue of fact as to the extent of the duty he owed to plaintiff.

The dissent makes much of the fact that plaintiff has not submitted a medical affidavit of merit in rebuttal to defendant's motion. However, we have held that "[a] movant's failure to sufficiently demonstrate its right to summary judgment requires a denial of the motion regardless of the sufficiency, or lack thereof, of the opposing papers (Winegrad v New York Univ. Med. Center, 64 NY2d 851; Zuckerman v City

*of New York,* 49 NY2d 557; *Friends of Animals v Associated Fur Mfrs.,* 46 NY2d 1065; *Lurie v Child's Hosp.,* 70 AD2d 1032)" *(Cugini v System Lbr. Co.,* 111 AD2d 114, 115 [material in brackets added]).

There are too many questions unanswered at this time, relative to the standard of care, if any, that defendant owed to plaintiff relative to subsequent treatment.

Defendant's attorney's conclusory affirmation, which is not supported by defendant's examination before trial, that defendant owed plaintiff no responsibility, after his accurate diagnosis, is insufficient to mandate summary judgment in favor of defendant.

We agree with Special Term that there are too many serious issues of fact here to dispose of this action without a trial.

Asch, J. (dissenting): I dissent and would reverse the order of Special Term, sever the action brought against defendant physician, Jesse D. Stark, and enter a judgment of dismissal in his favor.

In this case, Dr. Jesse D. Stark has made a convincing showing that he correctly read two barium enema X rays and accurately diagnosed and reported a cecal neoplasm. Dr. Stark's correct readings are conceded by plaintiff's counsel and were in fact relied upon by plaintiff and accepted by Special Term. Plaintiff's case against defendant Stark is based solely on the speculative and unsubstantiated conclusions of her attorney.

A balance must be struck, by the law, between holding professional people responsible for their malpractice and permitting those who have performed their tasks in a satisfactory manner to be insulated from the expense and personal burden of having to defend lawsuits which have no foundation. It is not always easy to demarcate the line between the two categories, but in this case it is. Obviously, if we freely permit plaintiffs asserting malpractice claims to use a vacuum cleaner to suck in each and every physician, no matter how tangential his relationship to the patient, as a defendant, even where the facts clearly demonstrate adequate medical conduct, in time, we won't have any physicians at all to treat the ill.

This action was commenced by plaintiff, Maria Alvarez, for medical malpractice against Prospect Hospital and nine physicians for failure to make a timely diagnosis of carcinoma of plaintiff's cecum (first segment of large intestine).

In the bill of particulars as to Dr. Stark, a radiologist, it is alleged that he failed in general to diagnose the true condition from which the plaintiff was suffering—cecal carcinoma (cancer of the cecum).

Dr. Stark had read two barium enema X-ray films on December 7, 1978 and December 6, 1979, at the hospital. After each, his conclusion was: cecal neoplasm (abnormal new growth in the cecum).

These very findings were relied upon by plaintiff as a basis for several theories in the bill of particulars as against the remaining defendants:

"in failing to follow through on tests and procedures which were in fact performed; in failing to determine the origin, nature and/or cause of a lesion *which was found in a barium enema;* * * *

"in failing to discover and/or treat the nature and cause of lesions and/or irregularities *noted in barium enemas performed upon plaintiff;* * * *

"in failing to explain, attempt to explain, or perform tests, procedures, examinations, and/or surgery which would have explained the inconsistency between the normal colonoscopic examination of plaintiff and the lesions and/or irregularities *noted upon the barium enema(s) performed upon plaintiff*" (emphasis added).

Thus, plaintiff adopted Dr. Stark's findings as a basis for her claim against the remaining defendants that there was a failure to diagnose a cecal neoplasm at an early stage.

Moreover, there was *no* claim in either the complaint or the bill of particulars that Dr. Stark's diagnosis of the cecal neoplasm was either erroneous or incomplete.

Dr. Stark was a board certified radiologist and Chief of Radiology at Prospect Hospital during the periods of plaintiff's care and treatment. His involvement with this plaintiff centered solely on his interpretation of the two barium enema films taken in December 1978 and December 1979, during her second and fourth admissions to Prospect Hospital.

It was established at his examination before trial that, in December 1978, Dr. Neill, the attending physician, had ordered certain X rays including a chest X ray, an intravenous pyelogram and a barium enema. The first two were negative for any pathology given.

The first barium enema was performed on December 7, 1978, to rule out pathology in the colon. Dr. Stark rendered a

report dated September 7, 1978, which concluded there was a cecal neoplasm.

During the fourth admission, specifically on December 6, 1979, he was requested by Dr. Gubitose to perform a second barium enema. Dr. Stark interpreted the film as demonstrating cecal neoplasm.

Dr. Stark's only involvement was to perform X-ray examinations requested by attending doctors. He had no say in the decision as to which X rays would be ordered. His function was to read and interpret the film. He did not render any care or treatment to the plaintiff. It was thus unnecessary for him to consult with other members of the staff or write any orders in the chart.

From a reading of the bill of particulars, it was clear that Dr. Stark's findings of cecal neoplasm on the two barium enemas were "noted" by plaintiff's attending physicians. Moreover, it was established that Dr. Neill at his examination before trial on March 25, 1982, had testified that on December 9, 1978, he had *read* the first barium enema report and had gone to the X-ray department and actually examined the films himself. Dr. Neill had no discussion with the physicians in the radiology department.

The motion was opposed solely by the affirmation of the attorney for the plaintiff, since plaintiff was "unavailable" to sign an affidavit.

Counsel readily conceded that Dr. Stark's readings of the two barium enemas were correct. However, he asserted that Dr. Stark should have discussed the results of the tests with the treating physician and Dr. Stark should have "monitored" plaintiff's condition to insure that the treating physician was dealing with the condition appropriately. Plaintiff did not annex an affidavit of a medical expert to support these newly asserted theories of liability.

A moving party in a medical malpractice case must make a prima facie showing of entitlement to judgment, as a matter of law, by tendering sufficient evidence to eliminate any material issue of fact from the case *(Winegrad v New York Univ. Med. Center,* 64 NY2d 851, 853 [citing *Zuckerman v City of New York,* 49 NY2d 557, 562; *Sillman v Twentieth Century-Fox Film Corp.,* 3 NY2d 395, 404]). Defendant Stark has met this requirement.

Dr. Stark has established his right to summary relief through his testimony at his examination before trial, the reports he made on his diagnosis of cecal neoplasm on both X-

ray readings in December 1978 and 1979, respectively, and plaintiff's bill of particulars.

It was shown that Dr. Stark's only nexus with this plaintiff was to interpret various X-ray films as ordered by the physicians attending plaintiff. The crux of plaintiff's theories of malpractice are based on the failure of the attending physicians to follow up the irregularities and diagnosis on the two barium enema films which were reported by Dr. Stark as showing cecal neoplasm.

No one has contended that these readings are erroneous, incomplete or not made at an early enough time. Moreover, it was shown that, after the second interpretation in December 1979, plaintiff promptly underwent a bowel resection for cecal neoplasm. A bone survey study done in April 1980 revealed no further metastasis.

The over-all theories set forth in the bill of particulars with respect to malpractice in the care and treatment of this plaintiff have no bearing on the work done by Dr. Stark. It was not his province to participate in the general care of this patient, which would include writing orders, making records, consulting with other treating physicians and, in general, monitoring the patient while rendering care. Thus, his lack of office records on this patient shows his minimal involvement was only to read, interpret and report his X-ray findings.

His lack of recollection with respect to consultations does not mean he had a duty to consult. On undisputed facts, therefore, he correctly interpreted and reported his X-ray findings. His findings *were read and understood by the plaintiff's treating physician.* These *very* findings were used by plaintiff in her bill of particulars as the gravamen of her theories of malpractice against the various other physicians.

In view of this, Dr. Stark tendered sufficient evidence to eliminate *any* material issue of fact with respect to any possible deviations from proper medical practice.

It was essential for plaintiff to submit evidentiary facts, *by medical affidavits* or otherwise, rebutting the prima facie showing by Dr. Stark and showing triable issues as to a deviation from accepted medical practice *(Fiore v Galang,* 64 NY2d 999).

Plaintiff's attorney's affidavit falls far short of the requisite proof. His unsupported contentions, in essence, are that there *may* have been a duty on the part of Dr. Stark to consult with the attending physicians and to monitor the plaintiff, notwithstanding that Dr. Stark's only contact with the patient was to

read and interpret the barium enema X rays which were ordered and acted upon by the other defendant treating physicians. These contentions are pure speculation and surmise. As noted, Dr. Neill (the attending physician) knew of the X-ray diagnosis of cecal neoplasm. Thus, the attempts to raise an issue as to Dr. Stark's failure to consult with any treating physician or to monitor the seriousness of plaintiff's malady have no support in this record.