(December 20, 1988)

■ CENTRAL NATIONAL BANK OF NEW YORK, as Successor in Interest to CENTRAL STATE BANK, Respondent, v CHALET FOOD CORP. et al., Appellants.—Order, Supreme Court, New York County (Kristin Booth Glen, J.), entered February 11, 1987, which granted plaintiff's motion for summary judgment, unanimously reversed, on the law, the motion denied and the judgment vacated, without costs.

We disagree with the IAS court that there are no triable issues of fact attending the claim by plaintiff-respondent Central National Bank of New York (the bank) that defendants-appellants Chalet Food Corp. and Anthony Godlewski are liable for the sum of $93,234, plus interest, as the amount due and owing on a $100,000 loan defendants allegedly obtained from the bank. Among the issues to be determined at trial are whether fraud attended the execution of the loan check, and whether the loan was obtained with due consideration. *(See, Fuchs v MiCAD Sys.,* 138 AD2d 312, 313.) The resolution of these and other factual issues precludes the grant of summary judgment. *(Pross v Jadam Equities,* 134 AD2d 154, 156.)

The individual defendant, Godlewski, is the owner and operator of the corporate defendant, Chalet, doing business as a delicatessen in Islip, New York. According to Godlewski, a customer, Thomas O'Donnell, approached him in 1981 with an opportunity to purchase a 2% interest in a Las Vegas casino, for an investment of $100,000. When Godlewski indicated that he lacked the requisite funding to participate, O'Donnell assured him that financing would be arranged by a friend of O'Donnell in the banking industry. Subsequently, O'Donnell introduced Godlewski to William E. Lauter, then a vice-president of the bank. Lauter orally assured Godlewski that his loan would be approved. Godlewski's business and real property were to serve as collateral for the loan. No loan application, however, was ever prepared or filed.

Shortly thereafter, Lauter visited Godlewski's delicatessen with several documents to be executed in connection with the loan. Lauter again told Godlewski that the loan would be approved, without question, but that a bank check, in the amount of $100,000 payable to Chalet, would initially have to be endorsed and returned to the bank. Godlewski personally endorsed the check and, in addition, he executed a demand collateral note and a personal guarantee upon which the bank has sued. Lauter then left with the check and the other documents.

Godlewski asserts that the bank never returned the check to him. Hence, he argues that he never received the proceeds of the loan. Nonetheless, he admits that he made three payments on the loan before defaulting. He claims, however, that these payments were made only at the special insistence of O'Donnell.

Lauter testified, at his deposition, that Godlewski was desirous of obtaining a loan to reduce outstanding notes held by O'Donnell. Since this was an arm's length transaction between Godlewski and O'Donnell, the bank did not get involved in the details. Lauter was certain, however, that he delivered the check for $100,000 to Godlewski on the day that he visited the delicatessen. The proceeds of this check were then deposited, inexplicably, into two separate accounts: $60,000 into the account of Kerri Pontiac, a dealership with which O'Connell was affiliated, and $40,000 into the account of Richard Todd, who was, at that time, the starting quarterback for the New York Jets. Finally, Lauter stated that while he was not sure, he thought it possible that O'Donnell had been the one who had brought the check into the bank for the split deposit.

In 1983, the bank moved for summary judgment. This motion was denied by Justice Margaret Taylor who stated that the "papers submitted on the motion raise questions of fact that can only be resolved at trial." The parties then engaged in what the bank describes as "extensive discovery." Curiously, however, one of the key players in this case, O'Donnell, was never deposed.

In 1986, the bank again moved for summary judgment. Justice Kristin Booth Glen granted the motion, finding that Godlewski, in opposing the motion, had "merely raised shadowy semblances of issues which are not enough to defeat a motion for summary judgment". The record before this court suggests otherwise.

In any event, however inadequate the explanations were by Godlewski regarding this possibly shady deal, the explanations given by Lauter were clearly inadequate to explain his questionable practices which include, among other things, approving the negotiation to third parties of a sizeable corporate loan check endorsed in blank, approving a loan without a loan application, and preparing a promissory note without a stated interest rate or repayment schedule. Adding to the air of intrigue in this case is the somehow unsurprising fact that, due to banking irregularities, the bank is no longer in existence. We are left with the impression that each side to this

dispute could be more forthright in explaining the circumstances of this transaction.

It is well established that the drastic remedy of summary judgment is inappropriate when there is any doubt as to the existence of a triable issue. *(Sillman v Twentieth Century-Fox Film Corp.,* 3 NY2d 395, 404.) That this action is replete with such doubt cannot be gainsaid. This is so notwithstanding the troubling fact that Godlewski made three payments on a loan he claims he never received.

Accordingly, we reverse and deny summary judgment. The parties should have their day in court where, perhaps, some light can be shed on this shadowy case. Concur—Murphy, P. J., Sullivan, Carro, Milonas and Smith, JJ.