OPINION OF THE COURT
Kathleen Rogers, J.
Before the court is the summary judgment motion of the executor, seeking to dismiss the claims of the claimants, Sister John Helen and Kermit A. Main. The New York State Attorney-General, on behalf of a residuary charitable legatee, has joined in the summary judgment motion to dismiss the claims against the estate. The claimants have responded, requesting the court deny the instant motion, and schedule the matter for further proceedings.
On April 26, 1995, the last will and testament of the decedent, Malvina F. Barr, was admitted to probate, and letters testamentary were issued to the executor, David A. Guilmette. On October 31, 1995, Kermit A. Main filed a verified claim against the estate for reimbursement of $111.98 spent entertaining mourners attending the decedent’s funeral, and for $78,350 for services rendered to the decedent from 1953 to 1994. The claim alleges that the claimant, Kermit A. Main, entered into an agreement with the decedent in 1953, to provide services to the decedent. In the event there is found to be no agreement, the claimant seeks recovery of the sums demanded under the theory of quantum meruit. The services purportedly rendered, and the amount charged by the claimant are as follows:
1953-1956 Companion (evening) /messenger $ 4,800
1957-1971 Companion/driver/yard care/ snow removal/entertainment/ messenger / gardener (rate of $100 per month) $16,800
1972-1988 Messenger / driver / yard care/snow removal/entertainment/gardener/ shopping/food preparation (rate of $100 per month) $19,200
1988-1990 Companion/house repair/snow plowing/yard care/pet care/ shopping/entertainment/ transportation ($100 per week) $14,700
*687 March 1990 Pet care room and board
Onward ($8 per day) $16,400 $ 450 Veterinary costs
1991-1994 Supervision and helper $ 6,000
On October 31, 1995, Sister John Helen filed a verified claim against the estate for $17,200 for services rendered to the decedent from 1953 to 1994. The claim alleges that the claimant, Sister John Helen (Kathryn A. Main), entered into an agreement with the decedent in 1953, to provide services to the decedent. In the event there is found to be no agreement, the claimant seeks recovery of the sums demanded under the theory of quantum meruit. The services purportedly rendered, and the amount charged by the claimant are as follows:
1953-1956 Companion (evening)/messenger $4,800
1972-1988 Messenger $8,400
1991-1994 Supervision $4,000
On December 15, 1995, the estate formally rejected both claims, alleging each was barred by the Statute of Limitations and the Statute of Frauds. On October 25, 1996, the estate filed a motion requesting that the court direct the claimants to file supplemental bills of particulars, or in the alternative, preclude the claimants from presenting evidence relating to the same. On November 11,1996, the claimants filed a response and cross motion seeking additional discovery from the estate. The estate replied to the cross motion, noting some of the discovery requested had been supplied, and asserting that certain demands went beyond the scope of the discovery rules. On the return date of the motion and cross motion, the court, with the consent of the parties, decided to hold the competing motions in abeyance pending the estate’s submission of a summary judgment motion.
On December 16, 1996, the estate filed the instant summary judgment motion, alleging that the claims should be dismissed by application of section 5-701 of the General Obligations Law. On January 6, 1997, the claimants responded,[1] filing an affidavit from Sister John Helen and an affidavit from Kermit A. *688 Main. The claimants also filed a memorandum of law.
The affidavit of Sister John Helen alleges that on August 23, 1953, her mother, Helen T. Main, entered into a contract with the decedent (who was her sister-in-law at the time), which required the affiant and Kermit Main to leave home and stay with decedent. Sister John Helen further states that "it was understood we would be compensated for this extreme modification of and hardship to our lives, although such compensation would not be received until after Mrs. Barr’s death in order to insure that Malvina Barr would not be left short of funds during her lifetime.” The affiant then alleges she performed numerous services for the decedent, and that the agreement was reaffirmed by further verbal statements, actions and writings. The claimánt'has failed to put forth these further verbal statements, actions and writings, except to allege that the attorney for the estate must have these unidentified documents.
The affidavit of Kermit A. Main duplicates the allegations contained in his sister’s affidavit, and further alleges that "there are numerous disinterested witnesses who can testify to the nature and value of services rendered to Mrs. Barr.” Furthermore, he states there are "several disinterested witnesses to my express agreement with Mrs. Barr.” The claimant has not included the names and addresses of these witnesses, affidavits from these witnesses, nor even what the sum and substance of their testimony would be.
Summary judgment is a drastic remedy which should not be granted if there is any doubt as to the existence of triable issues. (Moskowitz v Garlock, 23 AD2d 943 [3d Dept 1965]; Braun v Carey, 280 App Div 1019 [3d Dept 1952].) Nevertheless, to defeat a motion for summary judgment, the opponent must present evidentiary facts sufficient to raise a triable issue of fact. (Sillman v Twentieth Century Fox-Film Corp., 3 NY2d 395 [1957].) The opposing party "must avoid mere conclusory allegations and come forward to lay bare his proof’ (Siegel, NY Frac § 281, at 410 [2d ed 1991]).
In the instant matter, the claimants are seeking recovery under two separate theories. The first theory of recovery alleges that there was a contract created in 1953,[2] which required the claimants to perform certain services for the decedent, *689 with payment to occur after the decedent’s death. The General Obligations Law states that:
"Every Agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking:
"1. By its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime” (General Obligations Law § 5-701[a]).
Assuming, without so finding, that such an oral agreement did exist as between the claimants and the decedent, or between the claimants’ mother and the decedent, that agreement must be considered void in the absence of any writing to support it. More specifically, the purported agreement is not capable of performance before the end of a lifetime because the consideration, i.e., payment under the agreement, is wholly inchoate until the death of the decedent. "Any other conclusion would be contrary to the general purpose of section 5-701 of the General Obligations Law insofar as it seeks to prevent the assertion of fraudulent claims against the funds of deceased persons who are no longer available to deny the alleged oral agreement”. (Dreher v Levy, 67 AD2d 438, 441 [2d Dept 1979], citing Bayreuther v Reinisch, 264 App Div 138, affd, 290 NY 553.) Furthermore, the application of the General Obligations Law aside, the claimants put forth no evidence of any such oral contract other than the conclusory allegations that such a contract was formed. The claimants provided no evidence of the material elements of the contract, nor of the terms and conditions of the purported contract. The claims of Sister John Helen and Kermit A. Main arising under the alleged contract with the decedent must fail.
Additionally, it is unclear from the allegations of the claimants whether or not they were alleging the decedent promised to make some type of testamentary disposition to their benefit. If such were the case, the Estates, Powers and Trusts Law contains a concomitant section to that of the General Obligations Law. The EPTL renders every agreement, promise or undertaking to make a testamentary disposition unenforceable unless the same is in writing and subscribed by the party to be charged therewith. (See, EPTL 13-2.1 [a].)
*690 The second theory of recovery is based upon the equitable doctrine of quantum meruit. Essentially, the claimants have alleged that even if an express contract did not exist as between themselves and the decedent, they performed certain services for the decedent and are entitled to payment for the same to prevent the unjust enrichment of the estate. In order to prove such a claim, there must be proof of some intent on the part of the decedent to pay for the services rendered. (See, 3 Warren’s Heaton, Surrogates’ Courts § 71.11 [4] [a]; see also, Matter of Argersinger, 168 AD2d 757 [3d Dept 1990].) Generally, proof that services were in fact rendered raises a presumption that they were rendered in the expectation of compensation. Nevertheless, when the parties are related, the presumption is reversed, and "it is presumed that the services were rendered in consideration of love and affection, without expectation of payment.” (3 Warren’s Heaton, op. cit., § 71.11 [4] [a], citing Matter of Adams, 1 AD2d 259 [4th Dept 1956], affd 2 NY2d 796 [1957]; Matter of Spiss, 50 Misc 2d 27 [1966]; Matter of Schultz, 18 Miscv 2d 1012; Matter of Wilson, 178 AD2d 996 [4th Dept 1991].)
In the instant case, although the claimants were not related by blood to the decedent, it is clear that the underlying relationship commenced because the decedent was married to their uncle. Such a relationship gives rise to the presumption that the services were rendered in consideration of love and affection. Furthermore, the claimants have not offered one scintilla of evidence that the decedent intended to pay for the services rendered.
Clearly, if offered at trial, the claimants’ allegations as to the statements of the decedent would be inadmissible upon application of the Dead Man’s Statute, which counsel for the estate has indicated he would invoke. (See, CPLR 4519.) Although the application of that statute is specifically limited to the trial of an action or proceeding, where the sole evidence offered "by the opposing party is the latter’s oral communication with the decedent, this Court [Appellate Division, Third Department] has found such to be insufficient to withstand summary judgment”. (Matter of Lockwood, 232 AD2d 782 [3d Dept 1996] [discussing Phillips v Kantor & Co., 31 NY2d 307].) Here, as in Lockwood, there are no witnesses to the claimants’ conversations with the decedent, nor is there any extrinsic evidence offered in support of the purported claim beyond the conclusory allegations contained within their supporting af *691 fidavits. In sum, the claimants are relying solely upon purported statements by the decedent to support their claim for payment. As stated previously, the response to the summary judgment motion is the claimants’ opportunity to lay bare their case. They have done so, and clearly it is insufficient as a matter of law.
Therefore, based upon the foregoing, it is hereby ordered, adjudged and decreed that the summary judgment motion of the estate be, and the same hereby is, granted; and it is further ordered, adjudged and decreed that the claims of Sister John Helen (Kathryn A. Main) and Kermit A. Main be, and the same hereby are, dismissed.

. The motion required service of a response seven days before the return date of the motion. The estate objected to the response of the claimants, which was filed on January 6th, only two days before the scheduled return *688 date. Although the court heard arguments relating to the same, it determined no prejudice had inured to the estate and allowed the tardy response.

. The court would note that the original verified claim of Sister John Helen alleges that she formed a contract with the decedent in 1953. Yet her *689 affidavit in response to the summary judgment motion avers that her mother formed a contract in 1953 with the decedent. The verified claim and affidavit of Kermit A. Main contain the same anomaly.