■ DIOMARA DEJESUS, an Infant, by His Father and Natural Guardian, FRANCISCO DEJESUS, Respondent, v JOSE J. ALBA et al., Appellants. [882 NYS2d 12]—

Order, Supreme Court, Bronx County (Nelson S. Roman, J.), entered August 4, 2008, which denied defendants' motion for summary judgment dismissing the complaint, reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment in favor of defendants dismissing the complaint.

There is no question of fact as to how the accident occurred. The record supports the conclusion that plaintiff, 16 years old at the time of the accident, elected to enter the street between cars and, as a result, ran (or in plaintiff's hastily contrived revision, "walked") into defendant's car, without warning.

At her deposition, plaintiff gave two versions of the accident. She first testified that the accident occurred in front of her then-boyfriend's house, where she was playing at an open fire pump. When the accident happened, she was "running away from a guy" called Wacho, a 20-year-old friend, who was trying to get her wet. When he started chasing her, she was on the sidewalk and then she ran into the street. Before she ran into the street she saw a car waiting for the light to change towards her right.

Plaintiff testified that she did not see the car before it hit her. She was hit by the "front" of the car, coming from her right side, and it hit her left leg. The impact was light, but knocked her to the ground on her left side.

She also testified that the police asked her questions at the accident scene, and, specifically, she was asked how the accident happened. She said that she told the police, "I didn't remember." This initial inability to remember is particularly significant, because, after her testimony, her counsel requested a recess, and, when the parties went back on the record, stated that plaintiff wanted to "correct the previous statement she made." Plaintiff then testified that she had run across the street, and then walked back out into the street to get her sandal. She was actually walking at the time she was hit.

Defendant Ynes Alba testified that when the accident oc-

curred, she was driving two friends and her two children home from church in her minivan. One of her friends lived on Minerva Place, about two buildings down from the open fire hydrant, and defendant had been there before. The weather was sunny, nothing obstructed her vision, and she was not engaged in conversation, eating, drinking, smoking, or using a cell phone. Her maximum rate of speed was between 10 and 20 miles per hour.

She turned right onto Minerva Place from Jerome Avenue after waiting for a traffic light to change, and saw a fire hydrant spraying water, and five or more children playing in the street and on the sidewalk. She slowed her car down to about 10 miles an hour when she saw them.

The pedestrian came into contact with the driver's side door and mirror of her van. She did not apply the brakes or hear any warning sound before the impact. After the contact, she stopped, got out of the car, and asked the "young girl" who had been hit what was wrong. Plaintiff said "nothing," and then defendant asked her what happened. Plaintiff told defendant driver that "she was running away from the water pump" because somebody was going to spray her with water and she did not see defendant and "ran halfway into the street, and she ran into my car." Defendant called the police and waited until they came.

A nonparty witness, Rodolfo Vittini, who resides at Minerva Place, testified that, at the time of the accident, he was outside watching his son at play with the other children. He does not know either plaintiff or defendant. He testified that, before the accident occurred, plaintiff and 8 to 10 other children were running around and playing in the water at the fire hydrant. They were throwing water at each other and running up and down the street, and back and forth across the street. Vittini first said that he was sitting in front of his building and remained there the entire time, but later said that he had been sitting on a step of a building across the street from his house, and crossed back shortly before the accident because his son wanted to go home.

He saw defendant's car turning onto Minerva Place, and then it slowed down because a person was crossing the street. At the time of the accident, the car was "moving very slow." Plaintiff was being chased by a young boy who was trying to pour water on her, and "crossed in between two cars and then she crashed against the van" on the driver's side. When he first saw the van, he told the girl to be careful and yelled "watch out," but she continued. The girl crossed Minerva, and then tried to cross back, which is when the accident occurred. When he said "[w]atch out," the girl was "coming, running towards me, and

she turned around, like avoiding a young boy," then ran between the two cars towards the street. She "never stopped," because "[s]he was looking backwards" at the boy who was chasing her.

The police report of the accident states, in pertinent part, "pedestrian jumped out from between two cars."

Defendants moved for summary judgment dismissing the complaint, arguing that there was no issue of fact as to defendant driver's negligence, because the record demonstrated that plaintiff ran into the van. The motion court found that defendants had not satisfied their prima facie burden, because there were issues of credibility as to whether plaintiff was walking when she was hit, as well as whether she was struck by the front end of the car, in which case "the defendant may have had an opportunity to see the plaintiff before the accident occurred," and "also should have seen the plaintiff run across the street the first time before she came back for her sandal." The court also found that there was "a question of reasonableness that must be resolved by the trier of fact," given that the conditions on Minerva Place just prior to the accident "included children playing in the street and a fire hydrant spraying water onto the street."

In the first instance, there is no doubt that the accident occurred, whether plaintiff was running or walking, after she entered the street, without warning, from between two parked cars. Under even plaintiff's revised version that she was walking back to get her sandal, she came into contact with the vehicle after entering the street other than in the crosswalk. Had plaintiff, who was 16 years old, not entered the street, without warning, there would have been no accident. Such a factual scenario warrants dismissal of the complaint (*see e.g. Jellal v Brown*, 37 AD3d 179 [2007]; *Cunillera v Randall*, 196 AD2d 75 [1994], *lv denied* 84 NY2d 808 [1994]).

A driver in an area where children are playing need not exercise "extreme care or caution," although she must exercise the care that a reasonably prudent person would exercise under the circumstances (*Quarcini v Blackwell*, 10 NY2d 843, 844 [1961]).

The dissent relies on the decision in *St. Andrew v O'Brien* (45 AD3d 1024 [2007], *lv dismissed in part and denied in part* 10 NY3d 929 [2008]), for its conclusion that there are unresolved factual issues. In *St. Andrew*, the 15-year-old plaintiff was attending a festival held in a community center parking lot and, while being chased by friends, dashed between two parked cars into the street and was struck by the defendant's vehicle. The

Court, acknowledging that the issue of the driver's potential liability was "problematic," nevertheless found that since the driver knew "she was approaching an area congested with people, including children, on a street that was narrowed by parked cars," there was a question as to whether her speed was reasonable under the circumstances (*id.* at 1028, citing Vehicle and Traffic Law § 1180 [a]).

Unlike the situation in *St. Andrew*, however, there is testimony by both the driver and the nonparty witness here that defendant slowed down her car, and even plaintiff acknowledged that the impact was light. The only way there could have been no impact was if defendant had stopped her car entirely. Yet, stopping the car was unnecessary since plaintiff was on the sidewalk prior to the accident. It should also be noted that the 17-year-old driver in *St. Andrew* was in violation of section 501 (3) (b) of the Vehicle and Traffic Law, because she was operating her vehicle after 9:00 P.M. with only a junior license, and was unaccompanied by an adult.

Under the circumstances presented here, we find that there is no issue of fact as to whether the adult driver acted prudently, particularly because the version of the incident that plaintiff first gave at her deposition did not assign liability to defendant. Concur—Tom, J.P., Nardelli and Catterson, JJ.

Mazzarelli and Moskowitz, JJ., dissent in a memorandum by Mazzarelli, J., as follows: Plaintiff, a teenager, and several other children, were playing at an open fire hydrant on a hot summer day. The hydrant was located on the sidewalk of Minerva Place in the Bronx, close to the intersection of Minerva Place and Jerome Avenue. Plaintiff claims that a minivan operated by defendant Ynes Alba struck her after she had walked into the middle of Minerva Place, near the hydrant. Alba, however, asserts that plaintiff suddenly "darted" into the street from between some parked cars and ran into the side of her car.

At her deposition, plaintiff testified first that she had run into the middle of the road because she was escaping from a friend who was trying to get her wet with water from the hydrant. After a consultation with her attorney, plaintiff clarified that she had not run into the middle of the street *immediately* prior to being struck. Rather, she stated, she had walked back into the street to retrieve a sandal that had fallen off while she was being chased. Plaintiff also asserted that she did not see the minivan before it hit her.

When deposed, Alba testified that immediately before the accident she had been stopped at a traffic light on Jerome Avenue. She said she made the right turn onto Minerva Place, where

there were cars parked on both sides of the street. Alba stated that she had moved approximately four car lengths onto Minerva Place when the accident happened. During that time, she recalled having achieved a rate of speed no slower than 10 miles per hour, but possibly as fast as 20 miles per hour. She also related that, as she traveled those four car lengths before the accident occurred, she was able to observe the open hydrant, and that there were "a lot" of children in the area, both on the sidewalk and in the street.

Initially, Alba testified that she never applied her brakes before the accident occurred. Then, she stated that she slowed her car down to 10 miles per hour upon observing the children. When asked to repeat how she related the accident to police officers who arrived on the scene, Alba gave the following answer:

"I was coming from Jerome. I had left the traffic light at Jerome. I got onto Minerva Place. The girl came from my left side and hit up against my car. I hadn't seen her . . . she didn't cross in front of me. It was on my side. When she hit my car, because of that impact against my car, is when I saw her.

"I was driving along Minerva. The little the girl [sic] was running along the sidewalk on my left side, then suddenly turned and ran between two cars and ran up against my driver's side door. She was screaming, 'I didn't see her. I didn't see her. I didn't see her.' "

Nonparty witness Rodolfo Vittini testified that he was sitting on the stoop of a building on the same sidewalk as the hydrant for nearly two hours prior to the accident. He stated that approximately 15 minutes before the accident he observed plaintiff chasing and being chased by her friends in and around the hydrant. He further related that immediately before the accident he crossed the street to enter his own apartment building. When he arrived on the other side of the street he observed Alba's minivan approaching. He also saw plaintiff crossing from the side that he was now on back to the other side of the street (where the hydrant was). He told her to "watch out." After he uttered this warning, he asserted that plaintiff crossed all the way back to his side, and then, while she was crossing again to the other side, came into contact with Alba's minivan. According to Vittini, plaintiff ran into the minivan behind its left rear tire.

Defendants moved for summary judgment. They posited that the collective deposition testimony established that Alba was not negligent as a matter of law and that there were no issues of fact necessitating a trial. Plaintiff argued that summary judgment was not warranted because the testimony created ques-

tions of fact as to whether Alba had sufficient time prior to the accident to avoid, or at least minimize, it.

The court denied the motion. It held that defendants failed to satisfy their burden of making a prima facie case. Moreover, plaintiff's testimony that she was walking immediately before the accident, and that Alba's minivan hit her head on, raised a question of fact as to whether Alba had an opportunity to observe plaintiff and, if so, whether Alba took appropriate steps to avoid the accident.

Negligence cases can "rarely be decided as a matter of law" because "even when the facts are conceded there is often a question as to whether the defendant or the plaintiff acted reasonably under the circumstances" (*Andre v Pomeroy*, 35 NY2d 361, 364 [1974]). This is just such a case. The descriptions of the accident given by plaintiff and defendant are at odds and cannot be resolved without a trial.

Plaintiff's deposition testimony alone could warrant a different conclusion than that urged by defendants. If a jury were to find plaintiff to be credible, it could conclude that she was struck by the front of Alba's minivan. It could further decide that she was in the middle of the street not because she had "darted" into it, but because she had walked there to retrieve her sandal.

Even if plaintiff did dart into traffic, issues of fact requiring a trial remain. For example, the portion of Alba's testimony where she recounts her description of the accident to police officers is internally contradictory. First, Alba stated that she "hadn't seen" plaintiff before plaintiff hit her car. Then she stated that plaintiff "was running along the sidewalk on my left side, then suddenly turned and ran between two cars."
This latter statement suggests that Alba *did* see plaintiff before impact.

In addition, although Alba observed children playing on the sidewalk in front of the hydrant and on the street, she testified that she had reached a speed as high as 20 miles per hour while traveling only four car lengths. Given the presence of the children playing on the sidewalk and street, and the reasonable likelihood that one or more would dart into traffic from between the parked cars, it cannot be concluded as a matter of law that defendant took all reasonable steps to avoid an accident. Moreover, Vittini testified that plaintiff crossed the street two times before the accident, but after Alba's car turned onto Minerva Place. This raises a serious question as to whether Alba should have observed plaintiff and ensured that she was safely on the sidewalk before she decided to proceed.

To support their position, defendants rely on *Jellal v Brown*

(37 AD3d 179 [2007]) as "the closest analogy" to this case. However, in that case, it was "unrefuted that the infant plaintiff left the safety of the sidewalk, attempted to cross the roadway not at the crosswalk, and moved into the path of the vehicle." (*Id.*) Further, in that case, unlike here, there was no indication that the driver should have had reason to anticipate that a child would step into traffic. In another case where it was obvious that there were children in the immediate vicinity of the street, the Third Department declined to award the driver summary judgment (*St. Andrew v O'Brien*, 45 AD3d 1024 [2007], *lv dismissed in part and denied in part* 10 NY3d 929 [2008]). There, the plaintiff was being chased by friends at an outdoor festival. The plaintiff ran into the street from between two cars and was struck by the defendant's car. The court held that the driver "had knowledge that she was approaching an area congested with people, including children, on a street that was narrowed by parked cars. As such, whether the driver's speed was reasonable under the particular circumstances in which she knowingly proceeded (*see* Vehicle and Traffic Law § 1180 [a]* ) is a question for the trier of fact to resolve" (45 AD3d at 1028).

The majority argues that *St. Andrew* is inapposite because Alba slowed her car. However, the point of *St. Andrew* is that it cannot be concluded as a matter of law what the appropriate speed and driver behavior are in circumstances such as these. Indeed, as the Third Department observed in *St. Andrew*, "[i]n all but the most extraordinary instances, whether a defendant has conformed to the standard of conduct required by law is a question of fact necessitating a trial" (*id.* [internal quotation marks and citations omitted]). Here, even if Alba did slow down to 10 miles per hour, a jury must decide whether she should have slowed down even more, or possibly stopped, until she could be sure that it was safe to proceed.

The majority describes as "significant" the fact that, when asked by the police at the scene to describe the accident, plaintiff could not remember. It suggests that her initial failure to recall somehow makes suspect her request to correct certain testimony during her deposition. However, her lack of memory at the scene does not compel the conclusion that the fresh trauma of the accident caused anything more than a temporary lapse.

Nor does plaintiff's correction of her testimony in the middle of the deposition support the majority's implication that the new testimony was concocted. There are a variety of reasons

---

* Vehicle and Traffic Law § 1180 (a) provides that "No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing."

why plaintiff may have felt the need to clarify her testimony. In any event, neither plaintiff's nor Alba's recollection of the accident is perfect, nor is Vittini's, and plaintiff clearly disputes the version of events offered by Alba and Vittini. While defendants may believe that plaintiff's testimony is not true, that is for a jury, and only a jury, to decide. Our role on a motion for summary judgment is to identify factual issues, not to resolve them (*see Sillman v Twentieth Century-Fox Film Corp.*, 3 NY2d 395, 404 [1957]). I cannot, on this record, conclude that any flaws in plaintiff's memory make her completely incompetent to testify as to the cause of the accident. In any event, Alba's deposition testimony, standing alone, presents issues of fact and precludes summary judgment. Accordingly, I would affirm the order.