■ ALAN A. MASUCCI, Individually and as Administrator of the Estate of FRANCES MASUCCI, Deceased, Respondent, v BARRY FEDER et al., Defendants, and THEODORE SLUTSKY, Appellant. [601 NYS2d 108] —Order, Supreme Court, Bronx County (Hansel McGee, J.), entered March 4, 1992, which, *inter alia,* denied the defendant Slutsky's motion for summary judgment dismissing the complaint and all cross claims against him, unanimously affirmed, without costs; and, order of the same court, entered on or about April 29, 1992, which granted the defendant Feder's cross motion for summary judgment dismissing the complaint and cross claims against him, unanimously reversed, on the law, the motion is denied and the complaint and cross claims are reinstated, without costs.

The plaintiff instituted this medical malpractice action to recover damages for the wrongful death of his wife. He maintained that the decedent's death resulted from substantial departures from good and accepted practice on the parts of the defendants, Drs. Slutsky and Feder. Specifically, he alleged that Dr. Slutsky, a general practitioner, failed to diagnose and properly treat the decedent for bacterial endocarditis. He also alleged that Dr. Feder, a dentist, failed to administer or properly administer antibiotics to guard against endocarditis during dental treatment he provided the decedent.

Dr. Slutsky moved for summary judgment dismissing the complaint and all cross claims against him. He alleged that he began treating the decedent in 1976 for problems unrelated to this action and obtained a history from her which was negative for heart disease, lung disease, diabetes and allergies. On June 9, 1984, she came to his office complaining of a cough, fever and sore throat. He maintained that although he asked

her during this visit if there had been any changes in her medical history, she failed to advise him that she had been diagnosed with mitral valve prolapse.

Slutsky took the decedent's temperature and blood pressure and drew blood and urine samples which were sent to a laboratory for analysis. He gave her an antibiotic and instructed her to return to the office on June 13, 1984 for the results. On June 13th, the decedent telephoned to advise Slutsky that she was too weak to go to his office.

The decedent returned to the office on June 14th, accompanied by her daughter, since she still had a fever and a headache. The test results showed an elevated transaminase level, indicating heart or liver disease. Since Slutsky did not know what was wrong with the decedent, he sent her to an internist, specializing in gastroenterology. According to Slutsky, the internist recommended that the decedent be hospitalized, but she refused.

However, according to the decedent's daughter, the internist thought the decedent had hepatitis and ordered more tests. Although he indicated that the decedent might be more comfortable having these tests performed in a hospital, when the decedent asked if she had to go, he said that she could wait to see if her condition improved at home. On June 17, 1984, the decedent was brought to Montefiore Medical Center where she was diagnosed with subacute bacterial endocarditis and died a few weeks later.

The plaintiff contended that Slutsky departed from accepted practice by failing to perform blood cultures, electro and echocardiography, by failing to consider the diagnosis of bacterial endocarditis and by failing to recommend and arrange prompt hospitalization for the decedent. He alleged that contrary to Slutsky's denial of knowledge of the decedent's past history of heart disease, Slutsky's office records contain a notation dated January 10, 1981, "Vertigo with HCVD [Hypertensive cardiovascular disease] and angina." Slutsky, in his deposition, testified that he did not make this notation. Rather, he alleged that his secretary wrote this down without consulting him and that he was unaware of the decedent's history of heart disease. The decedent's daughter also claimed that she was with her mother during an office visit with Slutsky and that her mother told him about her history of rheumatic fever, of heart murmur and that at one time she was taking heart medication. The daughter also testified at a deposition that she wrote down her mother's history of heart disease on cards handed out by Slutsky's office employees.

The plaintiff further contended that contrary to Slutsky's deposition testimony, that he discussed hospitalization with the decedent on June 9, 1984, and that she refused, Slutsky's office records contain no such notation. His only notation concerning hospitalization is dated June 14th and states that the internist told him that the decedent refused to go to the hospital.

In an affidavit submitted in opposition to the defendants' motion for summary judgment, the plaintiff's medical expert asserted that in his opinion, there were substantial departures from accepted practice by Dr. Slutsky which resulted in the decedent's death, particularly the failure of waiting until June 14th to send her to a specialist, the failure to consider the diagnosis of endocarditis and the failure to hospitalize her. He also stated that Slutsky erred in failing to perform blood cultures and electro and echocardiography since these tests were indicated. The expert alleged that had these diagnostic tests been performed sooner, the correct diagnosis of the decedent's condition would have been made at a time when she could have been properly and promptly treated.

In an affidavit submitted in reply, Slutsky's medical expert alleged, *inter alia,* that subacute bacterial endocarditis is not an office diagnosis and that the decedent refused to be hospitalized. He further alleged that blood tests are not performed as an office procedure and that electrocardiography is not a diagnostic test for subacute bacterial endocarditis. Moreover, he contended that tests performed at the hospital indicated that the decedent's organism was refractory to treatment. In sum, this expert alleged that the decedent would have died even if Slutsky had diagnosed endocarditis and sent her to the hospital on June 9th.

A medical malpractice panel found that there was no malpractice committed by Slutsky. The Supreme Court, finding issues of fact as to the adequacy of the medical evaluation, treatment, care and practice performed by Slutsky, as well as the diagnostic and medical/therapeutic treatment rendered by him, denied his motion for summary judgment.

Dr. Feder cross moved for summary judgment dismissing the complaint and cross claims against him. He maintained that the decedent came to his office on April 14, 1984 to have a tooth filled and a crown polished. He conceded that he was aware of the decedent's heart problems and of the need to provide prophylaxis for the dental work performed but alleged that he fulfilled his duty by providing her with a prescription for erythromycin, an antibiotic.

In an affidavit, the plaintiff's medical expert alleged that Dr. Feder departed from accepted practice by failing to administer prophylaxis. Feder's office records indicate that he had prescribed erythromycin for the decedent on two earlier visits but the notation for April 14, 1984 only says "prophylaxis". It makes no mention of erythromycin. The expert further contended that even if Feder had prescribed erythromycin as he maintained, he administered a dosage which was inadequate according to the American Heart Association guidelines. This expert further alleged that erythromycin is effective in eradicating Staphylococcus aureus, which is an organism found in the mouth, and, since there was no evidence that the infection which caused the decedent's endocarditis arose from another site, there was a substantial probability that a proper dose of erythromycin would have been effective in preventing the development of the endocarditis.

Feder maintained that he did prescribe the antibiotic and that the decedent took it. However, he contended, as did a medical expert who submitted an affidavit on his behalf, that even if he had not prescribed the erythromycin, this failure would not have caused the decedent's endocarditis since the organism that caused the illness is rarely found in the mouth. Moreover, antibiotics are not considered effective against such bacteria.

The Supreme Court granted Feder's cross motion for summary judgment dismissing the complaint and all cross claims against him.

While we affirm the order of the Supreme Court as to Dr. Slutsky, we reverse the order granting Dr. Feder's cross motion since issues of fact exist requiring a trial of these matters. To succeed on their motions for summary judgment, the defendants had to make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324; *Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853). Failure to make such a prima facie showing requires a denial of the motion, regardless of the sufficiency of the opposing papers. If such a showing is made, the burden then shifts to the party opposing the motion to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact warranting a trial of the matter (*Zuckerman v City of New York,* 49 NY2d 557, 562). "In a medical malpractice action, a plaintiff, in opposition to a defendant physician's summary judgment motion, must submit evidentiary facts or

materials to rebut the prima facie showing by the defendant physician that he was not negligent in treating plaintiff so as to demonstrate the existence of a triable issue of fact *(Fileccia v Massapequa Gen. Hosp.,* 63 NY2d 639, *affg* 99 AD2d 796; *Neuman v Greenstein,* 99 AD2d 1018; *Buonagurio v Drago,* 65 AD2d 830, *lv denied* 46 NY2d 708). General allegations of medical malpractice, merely conclusory and unsupported by competent evidence tending to establish the essential elements of medical malpractice, are insufficient to defeat defendant physician's summary judgment motion *(Fileccia v Massapequa Gen. Hosp., supra; Bustamonte v Koval,* 98 AD2d 739; *Pan v Coburn,* 95 AD2d 670; *Himber v Pfizer Labs.,* 82 AD2d 776; *Baldwin v Gretz,* 65 AD2d 876)." *(Alvarez v Prospect Hosp., supra,* at 324-325.)

In support of his motion for summary judgment, Dr. Slutsky submitted his own affidavit of merit in which he maintained that his monitoring, care and treatment of the decedent did not deviate from accepted standards. This affidavit, in addition to his deposition testimony, consisted of bare conclusory assertions that he did not deviate from good and accepted medical practices and failed to establish that the plaintiff's cause of action had no merit so as to entitle him to summary judgment (CPLR 3212 [b]; *Winegrad v New York Univ. Med. Ctr., supra,* at 853; *see also, Canosa v Abadir,* 165 AD2d 823).

The plaintiff, however, introduced the affidavit of a physician who identified several departures from accepted practice by Dr. Slutsky which resulted in the decedent's death. In this expert's opinion, Dr. Slutsky's failure to perform blood cultures, electro and echocardiography, failure to consider the diagnosis of bacterial endocarditis and failure to recommend and arrange prompt hospitalization for the decedent constituted substantial departures. Although Dr. Slutsky, in his affidavit and at his deposition, and his expert, who submitted an affidavit only in reply to the plaintiff's response, disputed the testimony of the decedent's daughter, husband and the opinion of their expert, this dispute over when hospitalization was first recommended, when the referral to an internist was first made, whether Dr. Slutsky was aware of the decedent's history of heart disease and whether any measures taken would have saved the decedent's life, merely created issues of fact which could only be resolved at trial.

Summary judgment is a drastic remedy which should not be granted where there is any doubt as to the existence of triable issues of fact *(Sillman v Twentieth Century-Fox Film Corp.,* 3 NY2d 395, 404). Since " 'issue-finding, rather than issue-deter-

mination, is the key to the procedure' " *(supra,* at 404, quoting *Esteve v Abad,* 271 App Div 725, 727), the Supreme Court properly denied Dr. Slutsky's motion for summary judgment.

Based on these principles, it was error to grant Dr. Feder's cross motion for summary judgment. While we find that Dr. Feder, based on the affidavit submitted by a medical expert in support of his cross motion and on his deposition testimony, made a prima facie showing of entitlement to judgment as a matter of law, the plaintiff, by introducing the affidavit of his own expert and the testimony of the husband and daughter of the decedent, established the existence of material issues of fact warranting a trial of the matter *(Alvarez v Prospect Hosp., supra).*

Dr. Feder contended that the plaintiff failed to establish that the decedent's endocarditis was caused by his dental treatment. In an affidavit, Dr. Feder's medical expert asserted that because Staphylococcus aureus is so uncommon in the mouth, the decedent's death was not caused by the dental treatment she received from Dr. Feder. He added, however, that antibiotic prophylaxis for endocarditis for patients undergoing dental procedures is recommended for all patients with rheumatic heart disease, although it is not effective against most Staphylococcal bacteria. Dr. Feder alleged that he prescribed erythromycin for the decedent but even if he had not, this alleged departure would not have caused the decedent's endocarditis.

The plaintiff alleged that Dr. Feder failed to properly provide dental care and treatment to the decedent by failing to prescribe and/or administer proper and adequate antibiotic coverage before performing dental work, thereby permitting bacterial endocarditis to develop. Dr. Feder's medical records do not contain a specific entry that he prescribed an antibiotic for the decedent on April 14, 1984 although they contained such notation for other prior office visits. The decedent's daughter also testified that, contrary to his contention, Dr. Feder did not provide her mother with antibiotics.

If Dr. Feder prescribed the erythromycin as he alleged, the parties dispute the proper dosage for a patient such as the decedent to take and whether a higher dosage than that purportedly prescribed by Dr. Feder would have reduced the likelihood of the decedent developing endocarditis. The plaintiff's expert asserted that Dr. Feder departed from good and accepted practice by either not administering prophylaxis or by administering a dosage smaller than that recommended by the American Heart Association guidelines. Contrary to Dr.

Feder's expert, this physician alleged that Staphylococcus aureus is an organism found in the mouth and that erythromycin is effective in eradicating it. He concluded that because there is no evidence that the infection causing the decedent's endocarditis arose from another site, had the proper dosage of the antibiotic been administered, there was a substantial probability that the decedent would not have developed endocarditis.

The conflicting allegations of the parties and opinions of the experts created issues of fact requiring a trial. Therefore, the Supreme Court erred in granting Dr. Feder's cross motion for summary judgment *(Alvarez v Prospect Hosp., supra)*. Concur —Rosenberger, J. P., Wallach, Ross, Kassal and Nardelli, JJ.