OPINION OF THE COURT
David I. Schmidt, J.
Defendant New York City Housing Authority (NYCHA) moves for an order (1) vacating the note of issue and certificate of readiness filed by plaintiffs llene Taylor, as administratrix of the estate of Geraldine Taylor, Roshawn Taylor, an infant, by his mother and natural guardian, Sheohnna Taylor, Sheohnna Taylor, individually, and Terence Vaughn, individually and as father and natural guardian of infants Terence Taylor Vaughn and Brandon Taylor Vaughn, (2) removing this matter from the court’s trial calendar, (3) compelling plaintiffs to comply with outstanding discovery and appear for independent medical examinations, (4) issuing a conditional order of preclusion if plaintiffs fail to comply with outstanding discovery and appear for independent medical examinations and (5) extending the NYCHA’s time to file a motion for summary judgment to 60 days after discovery is completed. In a subsequent motion, the NYCHA moves for an order, pursuant to CPLR 3212, granting summary judgment dismissing plaintiffs’ complaint.
*651 Plaintiffs commenced this action to recover damages stemming from the death of Geraldine Taylor following a fire which occurred on February 17, 2008 and for personal injuries sustained by plaintiffs as a result of the fire. The following facts are largely undisputed. The fire broke out at approximately 7:50 a.m. in an apartment located in the NYCHA’s Lafayette Gardens Houses. At the time of the fire, the apartment was occupied by Geraldine, her boyfriend Terence Vaughn, their two sons Brandon Taylor Vaughn (Brandon) and Terence Taylor Vaughn (T.T.), Geraldine’s daughter Sheohnna Taylor, Sheohnna’s son Roshawn Taylor and Sheohnna’s boyfriend Tyre Sands. The apartment contained a living room and a hallway which led to three bedrooms. T.T. and Brandon shared the first bedroom on the left side of the hallway, Sheohnna, Roshawn and Sands slept in the bedroom located at the very end of the hallway and Geraldine slept in the bedroom to the left of Sheohnna’s bedroom. Terence slept in the living room of the apartment. The apartment contained a hardwired smoke detector located in the hallway leading to the bedrooms. The fire started in the bedroom shared by T.T. and Brandon, allegedly as the result of Brandon playing with matches.* T.T. was asleep at the time the fire started. After waking and discovering flames on and near Brandon’s bed, T.T. proceeded to the living room to alert Terence. Upon being awakened and informed of the fire, Terence directed the two boys to exit the apartment. Terence eventually exited the apartment thereafter. During the course of the fire, Sheohnna, Roshawn and Sands remained in their bedroom by an open window until the fire was extinguished by firefighters. Geraldine remained within the apartment for a period of time after the fire started before she was removed by firefighters. Geraldine died later that evening.
On May 16, 2008, llene Taylor, as administratrix of the estate of her mother Geraldine, filed a notice of claim with the NYCHA wherein she alleged that Geraldine’s death was proximately caused by the failure of the NYCHA to equip the apartment with a working smoke detector and by the absence of a self-closing door. Notices of claim were also filed on behalf of the other plaintiffs similarly alleging that the NYCHA failed to equip the apartment with a working smoke detector and that “access in and out of said premises was inadequate by but not limited to the lack of self closing doors.” Plaintiffs filed a sum *652 mons and complaint on October 17, 2008 which included a cause of action for the wrongful death of Geraldine and which sought damages for personal injuries sustained by the other plaintiffs as a result of the fire and, with respect to the children of Geraldine, damages for the loss of parental care and guidance.
On December 8, 2009, Sheohnna provided testimony at an examination before trial (EBT). Terence and T.T. were deposed on December 10, 2008. The NYCHA contends that it is entitled to summary judgment based on the EBT testimony of these plaintiffs, which it maintains establishes as a matter of law that the NYCHA fulfilled its duty to install an operable smoke detector in the apartment and, alternatively, that the absence of an operable smoke detector was not the proximate cause of plaintiffs’ injuries.
The proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law tendering sufficient evidence to demonstrate the absence of any material issues of fact (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]). Failure to make such prima facie showing requires a denial of the motion regardless of the sufficiency of the opposing papers (id.). The proof submitted to the court should be scrutinized carefully in the light most favorable to the party opposing the motion (see Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395, 404 [1957]). It is not sufficient for the moving party to simply point to alleged deficiencies in the proof of the party opposing the motion (see Daries v Haym Solomon Home for Aged, 4 AD3d 447, 448 [2004]). If the existence of an issue of fact is even arguable, summary judgment,must be denied (see Museums at Stony Brook v Village of Patchogue Fire Dept., 146 AD2d 572 [1989]).
Administrative Code of the City of New York § 27-2045 (a) (1) provides that
“[i]t shall be the duty of the owner of a class A multiple dwelling which is required to be equipped with smoke detecting devices pursuant to article six of subchapter seventeen of chapter one of this title to:
“(1) provide and install one or more approved and operational smoke detecting devices in each dwelling unit. Such devices shall be installed in accordance with the requirements of reference standard 17-12.”
Once the owner fulfills its statutory obligation to install an *653 operable smoke detector, the occupant of the dwelling unit becomes solely responsible for maintenance and repair of the device (Administrative Code § 27-2045 [b]; see Peyton v State of Newburgh, Inc., 14 AD3d 51, 52 [2004]).
In support of its contention that an operable smoke detector was installed in the apartment, the NYCHA relies on the following testimony of Terence:
“Q. Did you watch him as he installed that smoke detector?
“A. Yes, yes.
“Q. When he completed the installation of the smoke detector, did you observe if he tested it to see if it worked?
“A. Yes.
“Q. Did it work?
“A. Yes.” (Terence EBT transcript at 89.)
“Q. When they came to do the annual inspections after that smoke detector was installed, did you at any time ever observe anyone test the electric smoke detector?
“A. I heard it.
“Q. During the inspections?
“A. Yes.” (Terence EBT transcript at 93.)
By itself, the foregoing testimony establishes only that the smoke detector was receiving power and was operable when tested. However, plaintiffs argue that the NYCHA failed to comply with a provision, Administrative Code § 27-980, regarding the proper installation of hardwired electric smoke detectors. This Code section provides:
“Dwelling units shall be equipped with smoke detecting devices receiving their primary power from the building wiring and there shall be no switches in the circuit other than the over-current device protecting the branch circuit; provided, however, that dwelling units in existing buildings may, in the alternative, be equipped with battery-operated smoke detecting devices except where such buildings are substantially improved or altered on or after January first, nineteen hundred eighty-two.”
Plaintiffs maintain that the NYCHA was in violation of the above section based on the EBT testimony of the NYCHA’s witness, Gerard Wheeler, who testified that the wiring of the smoke *654 detector was tied to the wiring for the ceiling light and that the smoke detector did not have “a dedicated circuit” (Wheeler EBT transcript at 110).
It is not clear whether Administrative Code § 27-980 requires that a smoke detector be wired, as plaintiffs put it, on a “dedicated circuit” or that the smoke detector cannot otherwise be tied in with some other electrical device such as a light. By its plain terms, the provision disallows the installation of any “switches” in the smoke detector’s circuit other than the “over-current device protecting the branch circuit,” which presumably means the circuit breaker. The NYCHA had the burden on this motion to establish as a matter of law, preferably through testimony or affidavit of an electrician who installed or examined the detector, that the installation was proper under the Code (i.e., that there were no switches in the circuit) or that the installation could not have otherwise led to a malfunction. However, there is no proof offered which conclusively resolves these issues. There remains a question of whether or not the smoke detector’s wiring was tied to the light’s wiring in such a way that the smoke detector’s circuit would pass through the switch used to turn the light on and off. If the smoke detector operated on the same circuit as the light, it is possible that its source of power could have been affected by the light switch. Further, there remains the possibility that the detector’s power flow was adversely affected as a result of sharing the wiring to the light. Inasmuch as there is a question of whether the NYCHA complied with Administrative Code § 27-980 with respect to the wiring of the smoke detector, there is an issue of fact as to whether or not the NYCHA properly “installed” the hardwired smoke detector in accordance with Administrative Code § 27-2045 (a) (1) and whether an improper installation led to the detector’s failure on the morning of the fire.
The NYCHA further argues that even if the smoke detector was not operational, it is still entitled to summary judgment as the failure of the detector to sound was not a proximate cause of plaintiffs’ injuries. In particular, the NYCHA contends that the EBT testimony of T.T. and Terence plainly shows that Geraldine was alerted to the fire prior to the development of a serious smoke condition and had the opportunity to timely vacate the apartment. However, assuming that the detector did not sound, this court finds that issues of fact remain as to whether Geraldine’s death, and the injuries alleged by the other plaintiffs, could have been prevented if the smoke detector had *655 functioned properly. The court is mindful that the party opposing a motion for summary judgment is entitled to every favorable inference that may be drawn from the pleadings, affidavits and competing contentions of the parties (see Nicklas v Tedlen Realty Corp., 305 AD2d 385 [2003]; see also Akseizer v Kramer, 265 AD2d 356 [1999]; Henderson v City of New York, 178 AD2d 129, 130 [1991]; McLaughlin v Thaima Realty Corp., 161 AD2d 383, 384 [1990]; Gibson u American Export Isbrandtsen Lines, 125 AD2d 65, 74 [1987]; Strychalski v Mekus, 54 AD2d 1068, 1069 [1976]). Terence testified that the smoke detector never sounded during the fire (Terence EBT transcript at 96), and there is no other testimony or evidence demonstrating that the detector was in fact functioning at any time following the start of the fire. T.T. testified that when he woke he saw flames and felt the heat from the fire, which was on Brandon’s bed and the floor on Brandon’s side of the room (T.T. EBT transcript at 26-27). At this point, the door to the bedroom was open (T.T. EBT transcript at 28). The subject detector was located in the hallway outside of the bedrooms. The NYCHA does not offer any expert proof or other evidence to establish conclusively that the smoke detector should not have been sounding by the time the fire grew to the point witnessed by T.T. upon his awakening. T.T. testified that after he woke his father Terence and alerted him to the fire, he retrieved a bowl of water from the kitchen and returned to his room, where he observed some smoke coming into the hallway (T.T. EBT transcript at 30-32). T.T. testified that Geraldine and Sheohnna were still in their rooms at this point (T.T. EBT transcript at 33). T.T. subsequently heard Geraldine banging on Sheohnna’s bedroom door and calling her name when he was exiting the apartment with his brother (T.T. EBT transcript at 34). Terence testified that at some point after he awoke he witnessed Geraldine banging on Sheohnna’s bedroom door and calling her name (Terence EBT transcript at 111). While Terence testified that there was no smoke in the hallway when he witnessed Geraldine, the NYCHA does not offer an expert’s affidavit or other compelling proof to show that a functional smoke detector would not have been sounding at this point. Without such proof, the NYCHA cannot simply conclude that no alarm would sound unless smoke was actually visible.
Sheohnna testified that she was asleep in her bedroom with Sands and Roshawn with the door closed and locked when she “believed” Geraldine was calling her, causing Sheohnna to *656 awaken (Sheohnna EBT transcript at 71-72). However, Sheohnna testified that when she became “fully awake,” she did not hear Geraldine and saw that her room was filled with “light smoke” (Sheohnna EBT transcript at 72). Sheohnna testified that when she opened the bedroom door she observed “[h]eavy black smoke” in the hallway (Sheohnna EBT transcript at 74). Sheohnna testified that from the time she awoke to the time she went to the window to seek help, she did not hear Geraldine calling (Sheohnna EBT transcript at 76).
“[Qluestions of causation, such as that presented here, can rarely be ruled on as a matter of law. Where different reasonable inferences are possible, the question of proximate cause should be left for the jury’s determination” (Lein v Czaplinski, 106 AD2d 723, 725 [1984] [citations omitted]). Based on the foregoing testimony, there is an issue as to whether the lack of a functioning smoke detector unnecessarily delayed warning to Terence, Geraldine and the occupants of Sheohnna’s bedroom that there was a fire underway in the apartment. In particular, there is an issue as to the extent of Sheohnna’s alertness at the time she “believed” her mother was calling her name and whether Geraldine was expressly warning about a fire when she was calling Sheohnna’s name and banging on the door. A smoke detector “functions so as to alert residents to the presence of smoke, so they may then take action, if appropriate, to suppress the fire or, if necessary, to escape its spread” (Binh Nguyen v Prime Residential Bronx R&R V LLC, 307 AD2d 201, 202 [2003]) It may be inferred reasonably that had the smoke detector promptly sounded after the commencement of the fire, Sheohnna would have been alerted immediately to the possibility of danger and, as a result, reacted more quickly to investigate the situation and escape with Roshawn and Sands before the smoke condition became too serious. There is also a reasonable inference that Geraldine stayed behind in the apartment, through an increasingly heavy smoke condition, out of concern that Sheohnna, Sands and Roshawn were not aware of the danger or because she hoped to assist them in escaping. If Sheohnna, Sands and Roshawn had the opportunity to exit their bedroom and the apartment upon an early warning by a functional smoke detector, Geraldine would not have had a reason to stay behind and would have escaped the scene before the smoke became overwhelming.
Further, this court finds that the NYCHA has not established as a matter of law that Geraldine’s children have no claim for *657 loss of parental care or guidance. “[I]t has long been recognized that pecuniary advantage results as well from parental nurture and care, from physical, moral and intellectual training, and that the loss of those benefits may be considered within the calculation of pecuniary injury” (Zygmunt v Berkowitz, 301 AD2d 593, 594 [2003] [internal quotation marks and citations omitted]). While the allegations concerning Geraldine’s drug history and the removal of her children from her custody clearly bears upon the measure of damages for loss of parental care and guidance, the court declines to rely solely upon the testimony of Terence or llene Taylor with respect to these issues without substantiation by records from Family Court and/or Administration for Children’s Services (ACS). The NYCHA maintains that it is now in the process of procuring such records, which it had previously been unable to do absent the authorizations it requested from plaintiffs.
Accordingly, the summary judgment motion of the NYCHA is denied in all respects.
The NYCHA’s motion to vacate the note of issue, extend the time for summary judgment and to compel discovery and/or preclude is granted to the extent that the note of issue is vacated and this case is removed from the trial calendar. Further, the motion is granted to the extent that plaintiffs shall comply with all outstanding discovery requests, including submission to independent medical examinations if such have been demanded by the NYCHA. Plaintiffs state in their certificate of readiness that “[t]here are no outstanding request[s] for discovery.” However, at the time the note of issue and certificate of readiness were filed, certain items of discovery requested by the NYCHA had not been provided, including authorizations to obtain Family Court and ACS records. Plaintiffs have essentially acknowledged that discovery was outstanding at the time the note of issue and certificate of readiness were filed by turning over the requested authorizations in response to the motion of the NYCHA to vacate. Because the certificate of readiness contains a misstatement of material fact as to the absence of outstanding requests for discovery, the filing of the note of issue is a nullity (see Young v Destaso Funding, LLC, 92 AD3d 778 [2012]; Brown v Astoria Fed. Sav., 51 AD3d 961, 962 [2008]; Gregory v Ford Motor Credit Co., 298 AD2d 496, 497 [2002]).

 While it is not clear how the fire originated, plaintiffs make no allegation that the fire started as the result of any act or omission by the NYCHA.