**I.K. v City of New York**

2024 NY Slip Op 32407(U)

July 12, 2024

Supreme Court, New York County

Docket Number: Index No. 155161/2019

Judge: Leslie A. Stroth

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:    **HON. LESLIE A. STROTH**       PART        **12M**

*Justice*

-------------------------------------------------------------------------X

I. K.,

                   Plaintiff,

               - v -

THE CITY OF NEW YORK, THE DEPARTMENT OF
EDUCATION OF THE CITY OF NEW YORK, SELBY BUS
CORP., LEESEL TRANSPORTATION CORP., BELECK
VALMONT

                   Defendants.

-------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 155161/2019 |
| MOTION DATE | April 23, 2024 |
| MOTION SEQ. NO. | 003 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 003) 49, 50, 51, 52, 53,
54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67

were read on this motion to/for        JUDGMENT - SUMMARY       .

This action arises from an incident that occurred on October 30, 2018 when infant

plaintiff I.K. was assaulted on a bus en route to her school, the Manhattan Children's Center[1], by

defendant Beleck Valmont (Valmont), a Department of Education matron assigned to the subject

bus, which was owned by defendant Selby Bus Corp. (Selby) and operated by defendant Leesel

Transportation Corp. (Leesel). By Order dated January 10, 2020, Judge Verna Saunders granted

plaintiff's motion for a default judgment against defendant Valmont, with liability and damages

to be decided upon an inquest (Exh C).

Defendants City of New York, Department of Education of the City of New York, Selby

Bus Corp, and Leesel Transportation Corp move here for summary judgment, pursuant to CPLR

3212, arguing, *inter alia*, that they are not liable for the spontaneous and unforeseeable conduct

---

[1] Plaintiff asserts in the complaint that the Manhattan Children's Center is owned by defendants The City of New
York and The Department of Education of the City of New York.

155161/2019   K., I. vs. CITY OF NEW YORK                      Page 1 of 7
Motion No. 003

1 of 7

of Valmont, since Valmont had no prior incidences involving physical harm to others, defendants did not receive any prior complaints from parents or students, and defendants had a policy prohibiting any form of physical contact with students. A hearing was held for the instant application on April 23, 2024.

\*   \*   \*

It is well-established that the "function of summary judgment is issue finding, not issue determination" (*Assaf v Ropog Cab Corp.*, 153 AD2d 520 (1st Dept 1989) (quoting *Sillman v Twentieth Century-Fox Film Corp.*, 3 NY2d 395, 404 [1957])). As such, the proponent of a motion for summary judgment must tender sufficient evidence to show the absence of any material issue of fact and the right to entitlement to judgment as a matter of law (*Alvarez v Prospect Hospital*, 68 NY2d 320 (1986); *Winegrad v New York University Medical Center*, 64 NY2d 851 (1985)).

Once a party has submitted competent proof demonstrating that there is no substance to its opponent's claims and no disputed issues of fact, the opponent, in turn, is required to "lay bare [its] proof and come forward with some admissible proof that would require a trial of the material questions of fact on which [its] claims rest" (*Ferber v Sterndent Corp.*, 51 NY2d 782, 783 (1980)). The party opposing a motion for summary judgment is entitled to all favorable inferences that can be drawn from the evidence submitted (*See Dauman Displays, Inc. v Masturzo*, 168 AD2d 204 (1st Dept 1990)).

<u>Negligence, Negligent Hiring and Retention, and Negligent Supervision and Training</u>

"It is well-settled that to establish a claim of negligence, a plaintiff must prove: a duty owed to the plaintiff by the defendant, a breach of that duty, and injury proximately resulting therefrom. Where the negligence claim relates to an employer's retention and supervision of an employee, the complaint must include allegations that: (1) the employer had actual or constructive knowledge of the employee's propensity for the sort of behavior which caused the

**155161/2019  K., l. vs. CITY OF NEW YORK**
**Motion No.  003**

Page 2 of 7

2 of 7

injured party's harm; (2) the employer knew or should have known that it had the ability to control the employee and of the necessity and opportunity for exercising such control; and (3) the employee engaged in tortious conduct on the employer's premises ..." (*Moore Charitable Found. v. PJT Partners, Inc.*, 40 N.Y.3d 150 (2023)).

The Court finds here that there exist issues of fact as to whether defendants breached any duty owed to plaintiff in hiring and training Valmont. James Sarkis, executive director of contract operations at the Department of Education, stated that "drivers and attendants are all fingerprinted and go through background checks and training before they begin working for the Department of Education under a transportation contract" (Exh H, p 17). However, no proof of background checks and completed training relating to Valmont is attached to defendants' motion.

Similarly, according to Candy Munoz, an employee of defendant Leesel, "Valmont's background check revealed that he was what would be considered of good moral character as his background check did not reveal any prior incidences involving violent conduct, or other criminal behavior...Valmont, completed and passed the requisite training courses concerning appropriate conduct as a bus matron, which included no aggressive conduct, either physical or verbal, when interacting with students on the bus" (Exh L, ¶5-6). Again, however, defendants fail to submit any proof that the necessary background checks were indeed performed prior to hiring Valmont, nor do they submit evidence of the matron training courses in which he allegedly participated.

Of significance, the "The New York City Department of Education School Bus Student Incident Report" dated October 29, 2018 (Incident Report) states "IK used to spit on the face of the Matron Beleck Valmont. This morning she was wors[e] because she spat on the face of the aid..." (Exh 2). There is no indication in the moving papers as to when those prior incidents

**155161/2019  K., I. vs. CITY OF NEW YORK**
**Motion No. 003**

Page 3 of 7

occurred and how they were handled by Valmont, the Department of Education and its employees, Selby or Leesel. There is also no evidence as to whether or not defendants had any notice of Valmont's propensity to engage in physical contact with IK during the prior occasions referenced. The Court is unaware of Valmont's responses to these prior occasions as there is no testimony or other statements from the bus driver, (who notably shares Beleck Valmont's last name and also signed the Incident Report), the individual who took the video of the subject incident, who appears to be a Department of Education employee, Mr. Valmont, or any other witnesses.

In addition, the affidavit of Darren Johnson, workforce manager director for the Department of Education, provided that "Valmont had not been flagged after a background check was performed, nor had he been flagged because of any prior incidences, or complaints, concerning his work as a matron" (Exh K, ¶9). However, Mr. Johnson fails to attach proof of Valmont's background check and does not address whether Valmont had any prior complaints regarding his performance other than as a matron, or if there were any other complaints or investigations regarding his conduct. As with Mr. Sarkis and Ms. Munoz, Darren Johnson's statements are conclusory and lack any detail.

The Court finds that there are genuine issues of fact pertaining to defendants' breach of duty and that defendants have failed to demonstrate the appropriate background checks and training performed and Valmont's lack of propensity to engage in physical contact with IK or any other students. Thus, defendants' motion for summary judgment on plaintiff's claims for negligence, negligent hiring and retention, and negligent supervision and training is denied.

### Battery and Assault

"Under the doctrine of respondeat superior, an employer can be held vicariously liable for the torts committed by an employee acting within the scope of the employment. Pursuant to the

**155161/2019  K., I. vs. CITY OF NEW YORK**
**Motion No. 003**

**Page 4 of 7**

4 of 7

[* 4]

doctrine, the employer may be held liable when the employee acts negligently or intentionally, so long as the tortious conduct is generally foreseeable and a natural incident of the employment" (*Fernandez v. Rustic Inn, Inc.*, 60 A.D.3d 893 (2009)). "[A]n employer will not be vicariously liable for its employee's alleged assault where the assault was not within the scope of the employee's duties, and there is no evidence that the assault was condoned, instigated or authorized by the employer" (*Milosevic v. O'Donnell*, 89 A.D.3d 628 (1st Dept 2011)).

"Intentional torts as well as negligent acts may fall within the scope of employment. In either situation, the employer need not have foreseen the precise act or the exact manner of injury as long as the general type of conduct may have been reasonably expected" (*Patterson v. Khan*, 240 A.D.2d 644 (2nd Dept 1997)).

Here, as the Court indicates above, there is a question regarding the foreseeability of Valmont's conduct or a reasonable expectation that Valmont could be in physical contact with plaintiff, since the Report suggests that Valmont encountered similar situations prior to the subject incident. The affidavit of Ms. Munoz asserts that "[o]nce an Incident Report is filled out by a matron it would be submitted to the New York Department of Education's Office of Pupil Transportation, who would then notify the Bus Defendants regarding what next steps to take concerning any problematic children" (Exh L, ¶9). It is unclear whether such a report was previously submitted relating to Valmont's interactions with IK.

As to whether Valmont was acting within the scope of his employment, plaintiff relies on *Jaccarino v. Supermarkets Gen. Corp.*, 252 A.D.2d 572 (1998), where the Second Department held that "[c]ontrary to the defendant's contentions, evidence indicating that it specifically instructed its security guards to refrain from physical contact with customers does not compel the conclusion that, as a matter of law, the security guard in question was acting beyond the scope of his employment when he allegedly assaulted the plaintiff".

**155161/2019  K., I. vs. CITY OF NEW YORK**
**Motion No. 003**

Page 5 of 7

[* 5]

In the instant matter, Jose Encarnacion, a safety supervisor and examiner for Leesel testified that matrons "have to be role models", "they cannot grab" and "hit" (Exh I, p 51-52). He further stated that "they are not allowed to take any corrective actions" (Id at p 78). However, as with *Jaccarino*, although the employee matron's were allegedly instructed as to their conduct, an assumption cannot be made absent further proof that all matrons follow these instructions all the time, particularly Valmont. In fact, plaintiff submitted a video recorded by a Department of Education employee in which the person identified as Valmont is seen striking the plaintiff and the employee recording this conduct did not intervene.

Moreover, in the statement taken by Jenna Denapoli, Director of Human Resources for Leesel Transportation Corp, of October 31, 2018, there is a notation that "para-professional Justin complained to Beleck that "I" continuously spits on him, and Beleck is not taking care of it/not doing his job properly, which implies that part of Valmont's job was to control IK's behavior. Given the unresolved issues of fact relating to his employment as well, defendants' motion for summary judgment as to assault and battery is denied.

## Loss of Services

Plaintiff failed to address loss of services in its opposition. Nonetheless, "In New York, parents generally cannot recover for loss of consortium for their children. Although a parent may recover for loss of a child's services upon submitting proof that the child contributed to household income or paid a part of household expenses..." *(S.M. v. Madura*, 223 A.D.3d 486 (1st Dept. 2024)). Plaintiff here has not outlined sufficient contributions on the part of the infant plaintiff to support this cause of action. Therefore, loss of services is dismissed from the complaint.

*     *     *

**155161/2019   K., I. vs. CITY OF NEW YORK**
**Motion No. 003**

Page 6 of 7

Accordingly, it is hereby

ORDERED, that defendants' motion for summary judgment is denied, except that plaintiff's claim for loss of services is dismissed.

The foregoing constitutes the decision and order of the Court.

7/12/2024
DATE

HON. LESLIE A. STROTH
J.S.C.

CHECK ONE:

| | | |
|---|---|---|
| ☐ CASE DISPOSED | ☒ NON-FINAL DISPOSITION | |
| ☐ GRANTED  ☐ DENIED | ☐ GRANTED IN PART | ☒ OTHER |

APPLICATION: ☐ SETTLE ORDER  ☐ SUBMIT ORDER

CHECK IF APPROPRIATE: ☐ INCLUDES TRANSFER/REASSIGN  ☐ FIDUCIARY APPOINTMENT  ☐ REFERENCE

**155161/2019 K., I. vs. CITY OF NEW YORK**
**Motion No. 003**

Page 7 of 7

7 of 7