| **Steward v 221 W. 26th St. Corp.** |
| --- |
| 2025 NY Slip Op 32372(U) |
| July 7, 2025 |
| Supreme Court, New York County |
| Docket Number: Index No. 160364/2017 |
| Judge: Sabrina Kraus |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:  **HON. SABRINA KRAUS**

*Justice*

PART    57M

----------------------------------------------------------------------X

FRAJON STEWARD,

Plaintiff,

- v -

221 WEST 26TH STREET CORPORATION, 221 WEST 26TH STREET, LLC, CHELSEA TELEVISION STUDIOS, INC., ALL MOBILE VIDEO, INC., TALK WW PRODUCTIONS, INC., TALK WW PRODUCTIONS, INC. D/B/A THE WENDY WILLIAMS SHOW

Defendants.

----------------------------------------------------------------------X

INDEX NO.    160364/2017

MOTION DATE    10/08/2024

MOTION SEQ. NO.    002

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 002) 58, 59, 60, 61, 62, 63, 64, 65, 66, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130

were read on this motion to/for                              SUMMARY JUDGMENT                              .

## BACKGROUND

Plaintiff asserts that on June 6, 2017, she walked out of the rain, into the building at 221 West 26th Street, where the Wendy Williams Show was recorded, to join the audience for the taping of a show, and then slipped and fell on a mat shortly after entering the building. Plaintiff commenced this action asserting a cause of action for negligence and seeking damages for personal injuries allegedly suffered.

On October 29, 2024, Chelsea Television Studios Inc., All Mobile Video Inc., Talk WW Productions, Inc., and Talk WW Productions, Inc. d/b/a The Wendy Williams Show (collectively "WW") moved for summary judgment.

[* 1]

On January 3, 2025, 221 West 26th Street Corporation and 221 West 26th Street, LLC, (collectively "221") cross-moved for summary judgment, dismissal of any cross claims asserted against it and summary judgment on claims it asserted against WW.

On May 15, 2025, the motions were fully briefed and marked submitted and the Court reserved decision.

The motions are granted to the extent set forth below.

## ALLEGED FACTS

On June 6, 2017, at 8:59 am Plaintiff fell at the premises located at 221 West 26th Street, New York, New York.  Plaintiff and her son Marquis Steward had driven approximately ninety minutes to Manhattan from their home in Yaphank, New York, to see the Wendy Williams Show. Plaintiff testified that they left their home at 6:00 a.m. and that she knew the studio would close its doors to audience members at 8:30 a.m. After parking at 241 West 26th Street, Plaintiff and Marquise walked a few doors down to the building located at 221 West 26th Street where they saw a sign for the Wendy Williams Show.

Plaintiff testified that it was raining that morning, but she could not recall how hard it was raining. Plaintiff alleges that one or more of the Defendants had placed a mat in the entrance to the building, that the mat was wet, and that it therefore caused her to fall.

Weather data for New York City show during the 6:00 a.m. to 8:00 a.m. a total of 0.03" of rain fell in the morning hours and another 0.03" fell in the afternoon. The record indicates that rain had allegedly stopped approximately one hour before the accident occurred.

Plaintiff testified that she held her pocketbook on her right arm and was also holding on to her son as they made their way to the studio; they were walking together under the umbrella that he was holding. Plaintiff was wearing sandals with two-inch heels.

Plaintiff initially alleged her fall was caused by a wet rug placed on an entrance ramp. In opposition to defendants' motion for summary judgment, plaintiff raised for the first time a theory that the slope of the ramp contributed to her accident.

Upon entering the building, Plaintiff began walking down a ramp covered with a mat and testified that her right foot slipped because the mat was wet, and she fell. She could not estimate how far she had walked on the mat before the accident occurred. Three security guards and her son immediately came to assist her. A security guard interviewed her and prepared an incident report which Plaintiff signed.

According to the incident report, Plaintiff informed the security guard that the heel of her shoe broke, but her shoe did not appear to be broken upon inspection. The security guard noted that the location of the fall was carpeted and dry. Security personnel were stationed at the entrance and performed daily inspections of the runner area, checking for water snow or other hazards.

On December 12, 2016, Plaintiff underwent a total replacement of her right hip, which required surgery as a result of degenerative arthritis. Plaintiff was still receiving treatment for this condition on the date of the fall.

At the time of the accident, 221 West 26th Street, LLC owned the building located at 221 West 26th Street. 221 West 26th Street, LLC leased space in the building to its related entities, Chelsea Television Studios Inc. and All Mobile Video Inc. Talk WW Productions, Inc. entered

[* 3]

into a license agreement under which it produced episodes of The Wendy Williams Show at the studio on the premises.

On September 23, 2009, 221 West 26th Street Corporation ("Corporation") transferred ownership of the premises to 221 West 26th Street, LLC ("LLC") by deed recorded on October 2, 2009, approximately eight years before plaintiff's accident

Under the terms of a lease agreement, 221 West 26th Street, LLC leased portions of the building to defendants Chelsea Television Studios, Inc. ("Chelsea"). The lease indicates that certain office space and storage space in the basement was allocated to All Mobile Video, Inc. ("All Mobile Video"), though the nature of this arrangement is disputed.

The lease between the LLC and Chelsea contains several relevant provisions regarding maintenance and repair obligations. Paragraph 6 of the lease provides that the lessee "is entitled to receive all service, utilities, repairs, and facilities, which repairs and facilities the Landlord is required to provide pursuant to the Lease." Paragraph 14 grants the landlord authority to "enter the Premises at reasonable times (i) to inspect the same and to perform any work or make any necessary repairs thereto."

The lease also contains indemnification provisions under paragraph 11. The lease requires Chelsea to "indemnify and hold harmless" the LLC from claims arising from their use or occupancy of the premises or any acts or omissions by the lessees. However, Section 11.1 of the lease specifically excludes from this indemnification any liability resulting from the landlord's "gross negligence or willful misconduct."

AMV/Unitel, LLC (a non-party to this litigation) entered into a license agreement with Talk WW Productions, Inc. ("Talk WW") for the use of studio space, office space, and technical facilities for production of the Wendy Williams Show. Under this license agreement,

AMV/Unitel, LLC was required to maintain the facilities "in good operating condition, repair, and in safe condition." There is no evidence of any contract involving All Mobile Video.

## DISCUSSION

To prevail on a motion for summary judgment, the moving party must establish its cause of action or defense sufficiently to warrant the court as a matter of law in directing judgment in its favor. *Winegrad v. New York Univ. Med. Ctr.,* 64 N.Y.2d 851 (1985)*; Zuckerman v. City of New York,* 49 N.Y.2d 557 (1980). Absent such a *prima facie* showing, the motion must be denied, regardless of the sufficiency of the opposing papers (*Alvarez v Prospect Hospital,* 68 NY2d 320, 324 [1986]).

However, "[o]nce the movant makes the required showing, the burden shifts to the party opposing the motion to produce evidentiary proof in admissible form sufficient to establish the existence of a material issue of fact that precludes summary judgment and requires a trial" (*Dallas-Stephenson v Waisman,* 39 AD3d 303, 306 [1st Dept 2007], citing *Alvarez,* 68 NY2d at 324). "[A]ll of the evidence must be viewed in the light most favorable to the opponent of the motion" (*People v Grasso,* 50 AD3d 535, 544 [1st Dept 2008]).

"On a motion for summary judgment, the court's function is issue finding, not issue determination, and any questions of credibility are best resolved by the trier of fact" (*Martin v Citibank, N.A.,* 64 AD3d 477,478 [1st Dept 2009]; *see also Sheehan v Gong,* 2 AD3d 166,168 [1st Dept 2003] ["The court's role, in passing on a motion for summary judgment, is solely to determine if any triable issues exist, not to determine the merits of any such issues"], *citing Sillman v Twentieth Century-Fox Film Corp.,* 3 NY2d 395, 404 [1957]).

> To demonstrate prima facie entitlement to judgment as a matter of law in a premises liability case, a defendant must establish that it did not create the condition that allegedly caused the fall or have actual or constructive notice of that condition (*see Gordon v American Museum of Natural History*, 67 NY2d 836, 837 [1986]; *McMahon v Gold*, 78

AD3d 908, 909 [2010]; *Applegate v Long Is. Power Auth.*, 53 AD3d 515, 516 [2008]; *Powell v Pasqualino*, 40 AD3d 725 [2007]). To provide constructive notice, "a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit [the defendant] to discover and remedy it" (*Gordon v American Museum of Natural History*, 67 NY2d at 837).

*Hoffman v. Brown*, 109 A.D.3d 791, 792 (1ST Dept., 2013); *see also Buckle v Buhre Ave Foods* 232 AD2d 269 (1st Dept., 1996)( *defendant has burden as movant to establish absence of creation of dangerous condition or notice*).

## THE MOTION

Defendant has failed to meet its burden as it made no specific affirmative showing that it did not have actual or constructive notice of the hazardous condition as a matter of law.

> A defendant who moves for summary judgment in a slip-and-fall case has the initial burden of making a prima facie showing that it did not create the hazardous condition which allegedly caused the fall, and did not have actual or constructive notice of that condition for a sufficient length of time to discover and remedy it. To meet its burden on the issue of lack of constructive notice, a defendant is required to offer some evidence as to when the accident site was last cleaned or inspected prior to the plaintiff's fall. "Mere reference to general cleaning practices, with no evidence regarding any specific cleaning or inspection of the area in question, is insufficient to establish a lack of constructive notice" (*Herman v. Lifeplex, LLC,* 106 A.D.3d 1050, 1051, 966 N.Y.S.2d 473;).

*Mehta v. Stop & Shop Supermarket Co., LLC*, 129 A.D.3d 1037, 1038, (*citations omitted*)(2nd Dept., 2015); *See also Kravets v. New York City Hous. Auth.*, 134 A.D.3d 678 (2nd Dept , 2015)

There is no evidence that defendants inspected the mat prior to Plaintiff's fall, rather the evidence in the record pertains to general practices. Security personnel testified that when the gate is opened to let audience members in, they would check to make sure the mats are not folded or ripped. Personnel also testified that if anyone saw water, snow, mud, or sand on the mats, they would remove it. Defendants are unable to point to any specific inspection of the mat prior to Plaintiff's accident.

Additionally, the Court does not find that the storm in progress theory warrants a different result. First, the Court notes that in its moving papers Defendant goes to great lengths to dispute there was any storm at all.

Defendant first argues that there was little to no rain impacting the incident:

It Rained Only 0.03" in the Hours Before the Accident. Undisputed weather data for June 6, 2017 show that it rained only 0.03" that morning and that it rained 0.06" the entire day. 0.02" of rain was recorded that date and, even then, it fell only as of 3:00 a.m., or almost than twenty-nine hours before Steward injured herself. Thus, these undisputed records show that only trace amounts of rain fell on the day of Steward's accident and, significantly, that it had not begun to rain until shortly before she fell.

Defendants note, moreover, that according to undeniable meteorological data, it rained only 0.06 of an inch on the date of Steward's accident. Thus, it cannot be gainsaid that the date of the accident was particularly rainy or wet since only a trace amount of rain fell the entire day.

Notwithstanding the great lengths they go to state there was little to rain going on the date of the date of the incident, they next argue they are entitled to summary judgment based on the storm in progress doctrine.  The Court thus finds that defendants own submissions present triable issues of fact as to whether any precipitation occurred at or near the time that she slipped and fell. *Bodoff v. Cedarhurst Park Corp.*, 213 A.D.3d 802, 803 (2nd Dept., 2023).

Based on the foregoing, defendant's motion for summary judgment is denied.

## THE CROSS-MOTION

The Cross-motion is denied as untimely.  The Status Conference Order dated June 28, 2024, required all dispositive motions to be filed within 90 days of the Note of Issue. On July 11, 2024, Plaintiff filed the Note of Issue. Therefore, all dispositive motions had to be filed by October 9, 2024. On October 8, 2024, Defendants timely filed a motion for summary judgment setting a return date of October 29, 2024, for their motion.

[* 7]

On January 2, 2025, 221 filed a cross-motion for summary judgment against Defendants. 221 never requested or sought any extension of time to file a dispositive motion. The Court did not grant 221 permission to file a dispositive motion 85 days after the dispositive motion deadline of October 9, 2024.

CPLR 3212 provides, "[T]he court may set a date after which no [motion for summary judgment] may be made. . . If no such date is set by the court, such motion shall be made no later than one hundred twenty days after the filing of the note of issue, except with leave of court on good cause shown." Statutory deadlines as well as court-ordered deadlines should "be taken seriously by the parties." *Miceli v. State Farm Mut. Auto. Ins. Co*., 3 NY3d 725, 726 (2004).

Movant asserts the following as alleged good cause for the delay:

> On October 9, 2024, and October 10, 2024, I attempted to file the instant motion for summary judgment on behalf of Defendants 221 West 26th Street Corporation and 221 West 26th Street, LLC but each attempt was rejected by NYSCEF due to various filing errors, resulting in Docket Entries 67 through 83 being deleted as a "filing error" and which prevented timely filing of this application. It is not clear why the filing was rejected although it appeared to be related to payment for the filing. Strangely, despite attempts at filing the motion using my office's credit card and my own personal credit card, the NYSCEF system still continued to reject the filing, so it appeared that the issue was not with the payment method but rather with the system itself.

Movant assumes that this was a technical error on the part of NYSCEF but this is no more than speculation. Furthermore, movant provides absolutely no explanation or description for what took place between October 10, 2024, the last date filing of the motion was attempted and January 2, 2025, the date the cross-motion was actually filed. Thus, even if good cause for delay could have been established through October 11, 2024, no good cause is offered for the additional months between that date and the actual filing.

Additionally, assuming it was a technical failure on the part of NYSCEF the Court rules direct the procedure to be followed.

[* 8]

22 NYCRR § 202.5-b is labeled Technical Failures and provides:

The NYSCEF site shall be considered to be subject to a technical failure on a given day if the site is unable to accept filings or provide access to filed documents continuously or intermittently over the course of any period of time greater than one hour after 12:00 noon of that day. Notice of all such technical failures shall be provided on the site. When e-filing is hindered by a technical failure, a party may file with the appropriate clerk and serve in hard copy. With the exception of deadlines that by law cannot be extended, the time for filing of any document that is delayed due to technical failure of the site shall be extended for one day for each day on which such failure occurs, unless otherwise ordered by the court. In the event an attorney or party shall file and serve documents in hard copy pursuant to this paragraph, each such document shall include the notice required by paragraph (1) of subdivision (d) of this section, and the filer shall file those documents with the NYSCEF site within three business days after restoration of normal operations at that site.

Furthermore, the Court notes that although it was labeled as a "cross-motion" the papers do not limit themselves to cross-claims but improperly seek dismissal as to the plaintiff. *Kershaw v Hospital for Special Surgery* 114 AD 3d 75 (1st Dept, 2013)(*cross-motion improper vehicle for seeking relief against non-moving party*). Plaintiff filed no opposition to the cross-motion. It may be that plaintiff did not believe that a cross-motion would seek relief against a non-moving party or that the Court would enforce the deadlines set forth in previous orders and not consider the untimely filing.

As held by the Court of Appeals:

As this Court has repeatedly emphasized, our court system is dependent on all parties engaged in litigation abiding by the rules of proper practice (*see e.g. Brill v. City of New York,* 2 N.Y.3d 648, 781 N.Y.S.2d 261, 814 N.E.2d 431 [2004]; *Kihl v. Pfeffer,* 94 N.Y.2d 118, 700 N.Y.S.2d 87, 722 N.E.2d 55 [1999] ). The failure to comply with deadlines not only impairs the efficient functioning of the courts and the adjudication of claims, but it places jurists unnecessarily in the position of having to order enforcement remedies to respond to the delinquent conduct of members of the bar, often to the detriment of the litigants they represent. Chronic noncompliance with deadlines breeds disrespect for the dictates of the Civil Practice Law and Rules and a culture in which cases can linger for years without resolution. Furthermore, those lawyers who engage their best efforts to comply with practice rules are also effectively penalized because they must somehow explain to their clients why they cannot secure timely responses from recalcitrant adversaries, which leads to the erosion of their attorney-client relationships as well. For these reasons, it is important to adhere to the position we declared a

[* 9]

decade ago that "[i]f the credibility of court orders and the integrity of our judicial system are to be maintained, a litigant cannot ignore court orders with impunity" (*Kihl,* 94 N.Y.2d at 123, 700 N.Y.S.2d 87, 722 N.E.2d 55).

*Gibbs v. St. Barnabas Hosp.*, 16 N.Y.3d 74, 81 (2010).

Based on the foregoing the cross-motion is denied.

## CONCLUSION

WHEREFORE it is hereby:

ORDERED that the motion and cross-motion are denied in their entirety.

This constitutes the decision and order of the Court.

20250707145044SBKRAUSE80F7307E28C4327919C76F36B4B9DF1

| | |
|---|---|
| **7/7/2025** | |
| **DATE** | **SABRINA KRAUS, J.S.C.** |

| CHECK ONE: | | CASE DISPOSED | | **X** | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | | GRANTED | **X** | DENIED | | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |